**PETER E. HEUSER, OSB No. 81128**
**Email: heuser@khpatent.com**
**PIERRE C. VAN RYSSELBERGHE, OSB No. 91523**
**Email: pierre@khpatent.com**
**ELIZABETH A. TEDESCO, OSB. No. 05093**
**Email: tedesco@khpatent.com**
**SHAWN J. KOLITCH, OSB No. 06398**
**Email: shawn@khpatent.com**
KOLISCH HARTWELL, P.C.
520 SW Yamhill Street, Suite 200
Portland, Oregon 97204
Phone: 503-224-6655
Facsimile: 503-295-6679

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PRECISION AUTOMATION, INC.**, a Washington Corporation, and **TIGERSTOP, LLC**, an Oregon Corporation<br><br>   Plaintiffs,<br><br>  v.<br><br>**TECHNICAL SERVICES, INC.**, an Iowa Corporation, and **DAVID KREVANKO,** an individual,<br><br>             Defendants. | Case No. 07-707 AS<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND TRANSFER** |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II.     PERTINENT FACTS ...................................................................................... 3

III.    ARGUMENT ................................................................................................. 7

        A.    This Court Has Supplemental Jurisdiction over Plaintiffs' State Law
              Claims Because the Claims Share a Common Nucleus of Operative
              Fact with Plaintiffs' Patent Infringement Claims ................................... 7

              1.    Defendants' Actions During Krevanko's Employment by TSI
                    Constitute Facts Underlying Both Plaintiffs' State Law Claims
                    and Plaintiffs' Patent Infringement Claims ................................ 8

              2.    This Court Should Exercise Supplemental Jurisdiction Over
                    Plaintiffs' State Law Claims for Judicial Economy,
                    Convenience and Fairness to the Parties ................................... 12

        B.    Defendants' Motion to Transfer Should be Denied ......................... 12

              1.    Legal Standards for Transfer ................................................... 12

              2.    Krevanko Had an Implied Agreement with TigerStop to
                    Maintain Trade Secrets, and that Agreement Was Negotiated
                    in Oregon ............................................................................ 13

              3.    The Oregon Court is More Familiar with Oregon, California,
                    Washington, and Idaho Law .................................................... 14

              4.    Plaintiffs' Choice of Forum Should Be Afforded Significant
                    Deference ............................................................................. 15

              5.    The Parties Each Have Significant Contacts in Oregon
                    Relating to Plaintiffs' Causes of Action .................................. 15

              6.    Convenience of the Witnesses Favors Hearing This Action in
                    Oregon ................................................................................. 17

              7.    Convenience to the Parties Favors Hearing This Action in
                    Oregon ................................................................................. 19

              8.    Availability of Compulsory Process Favors Hearing This
                    Action in Oregon .................................................................. 19

              9.    Differences in the Cost of Litigation Do Not Favor Transfer ............. 21

        C.    Plaintiffs' Tortious Interference and Unfair Competition Claims Are
              Not Preempted by State Trade Secret Laws ................................... 22

IV.     CONCLUSION .......................................................................................... 22

## INDEX OF AUTHORITIES

**Cases**

*3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) ..................... 11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ........................... 13

*Executive Software North America v. U.S. District Court*, 24 F.3d 1545 (9th Cir. 1994) ............. 7

*Forte Capital Partners v. Harris Cramer*, 2007 WL 1430052 (N.D. Cal. 2007) ........................ 14

*Homer Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d. 1075 (D. Or. 2001) .................. 13, 15

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ............................................... 13, 21

*Mattel, Inc. v. Hyatt*, 664 F.2d 757 (9th Cir. 1981) ...................................................................... 7

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559
   (Fed. Cir. 1992) .................................................................................................................... 9

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235; 102 S.Ct. 252 (1981) .............................................. 13

*Qualcomm, Inc. v. Motorola, Inc.*, 989 F.Supp. 1048 (S.D. Calif. 1997) .............................. 10, 11

*Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194 (Fed. Cir. 2003) ........................ 10, 11

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Co.*, 127 S.Ct. 1184 (2007) ................. 13

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ............................................................... 13

*Thayer v. Nydigger*, 2000 U.S. Dist. LEXIS 1238 (D. Or. 2000) ................................................. 7

*U.S. Bank Nat. Ass'n v. Franulovic*, 2007 WL 1598091 (D.Or. June 01, 2007) ........................... 8

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ................................................................... 12

*Verdegaal Brothers, Inc. v. Union Oil Co. of Calif.*, 750 F.2d 947 (Fed. Cir. 1984) ................... 10

**Statutes**

28 U.S.C. § 1338(b) (2006) ........................................................................................ 7, 12

28 U.S.C. § 1367(a) (2006)......................................................................................... 7, 12

28 U.S.C. § 1404(a) (2006)............................................................................................ 12

**Rules**

Fed.R.Civ.P. 45(c)(3)(A)(ii) (2006)................................................................................ 19

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Precision Automation, Inc. ("Precision") and TigerStop LLC ("TigerStop") respectively manufacture and sell stop/gauge and pusher systems that automate the processing of wood into parts that can be used for products such as cabinets and furniture. Precision now owns at least 14 issued U.S. and foreign patents, as well as a number of pending U.S. and foreign patent applications relating to inventions in the stop/gauge and pusher system industry. TigerStop is the sole licensee in the United States under these patents and applications, and is responsible for selling products manufactured by Precision.

Defendant David Krevanko was employed by TigerStop from August 2002 to August 2006, ultimately holding the position of National Sales Manager. Before his departure from TigerStop, Krevanko was responsible for many of TigerStop's major accounts, in addition to being a key member of the executive team. In that role, Krevanko was privy to confidential business contacts, business plans, and research and development efforts of Precision and TigerStop.

On October 7, 2003, U.S. Patent No. 6,631,006 was issued to Precision for a system and method of marking materials for automated processing; on April 18, 2006, U.S. Patent No. 7,031,789 was issued to Precision for process management systems and methods; and on February 6, 2007, U.S. Patent No. 7,171,738 was issued to Precision for systems for processing wood workpieces, including steps for optimizing, cutting, and drilling a workpiece.

Defendant Technical Services, Inc. ("TSI") is based in Iowa with a western regional office in Portland, and is a competitor of Precision and TigerStop in the stop/gauge and pusher

system industry. TSI is selling machines it calls its RazorOptimal systems, which plaintiffs believe perform the steps claimed in the patents-in-suit.

In late 2006 or possibly in early 2007, TSI hired Krevanko—TigerStop's former National Sales Manager—as its own Western Region Manager. Krevanko resides in West Linn, Oregon, and heads TSI's newly-established western regional office in Portland. Precision has reason to believe that since being hired by TSI, Krevanko and TSI have used plaintiffs' confidential customer information to systematically call on customers in the western United States and elsewhere that had sales pending with TigerStop, to outbid TigerStop based on Krevanko's knowledge of confidential product pricing, and to appropriate sales for TSI.

Soon after defendants filed their first motion to dismiss and transfer, plaintiffs moved for expedited discovery so they could discover evidence to be used to oppose defendants' motion. Defendants subsequently filed their Second Motion to Dismiss and Transfer, and on July 10, 2007, the Court denied plaintiffs' motion for expedited discovery. This Opposition to Defendants' Second Motion is therefore based solely upon information plaintiffs have been able to develop in their own investigations.

Defendants' motion to dismiss the state law claims is based upon their allegation that diversity is destroyed by the presence of TigerStop. Defendants concede, however, that supplemental jurisdiction exists if the state law claims derive from a common nucleus of operative fact when compared to the patent infringement claims. This memorandum will demonstrate that the overlap between the evidence is clear.

Defendants' motion to transfer alleges that, because Precision is based in Vancouver, Washington, and not in Oregon, plaintiffs' choice of forum is entitled to little or no weight. Plaintiffs will demonstrate that their choice of forum is entitled to substantial weight where, as

here, the forum was selected based upon logic and convenience, and not upon forum shopping. Here, three of the four parties are based in the Portland metropolitan area, six of the seven inventors reside here, and many if not most of the pertinent records and witnesses are located in proximity to the Portland metropolitan area. To the extent plaintiffs have been able to find customers whose identity were trade secrets and who were offered the accused systems by TSI/Krevanko, many of those witnesses are located in the West, far more convenient to Portland than to Iowa.

Defendants have argued that for lack of standing, "TigerStop should be dismissed from this case when the state law claims are dismissed." [Memorandum ISO Defendants' Second Motion to Dismiss and Transfer, page 8]. As set forth below, plaintiffs strongly disagree that their state law claims should be dismissed, and that TigerStop lacks standing. However, in the unlikely event that defendants are successful in their efforts to have plaintiff TigerStop dismissed as a party, then complete diversity will be restored, and subject matter jurisdiction for the state claims would be reestablished based on diversity. Thus, TigerStop's dismissal would defeat defendants' jurisdictional arguments. Furthermore, with regard to transfer, if TigerStop were dismissed as a plaintiff, then TigerStop and its employees would become third party witnesses subject to the subpoena power of this Court, but not subject to subpoenas issued from the district court in Iowa.

## II.    PERTINENT FACTS

As noted above, to determine whether or not supplemental jurisdiction exists, the Court will need to decide whether the state law claims derive from a common nucleus of operative fact when compared to the patent infringement claims. In their First Amended Complaint plaintiffs allege that TSI has infringed the patents-in-suit by offering to sell its RazorOptimal systems.

[First Amended Complaint, ¶¶ 17, 22, 27, 32.] Plaintiffs allege that Krevanko learned trade secrets, including customer lists, cost data, product pricing information, pending product orders and the like while employed by TigerStop, and used that information to contact, influence, and appropriate customers of plaintiffs. [First Amended Complaint, ¶¶ 37, 40.] Plaintiffs have reason to believe that products offered to those customers included at least the accused RazorOptimal systems. Plaintiffs also allege that TSI had reason to know that Krevanko obtained that customer and product information under circumstances that gave rise to a duty to maintain secrecy, and that TSI nonetheless used that information for business purposes. [First Amended Complaint, ¶ 41.] Plaintiffs believe that such information relates to at least the accused RazorOptimal systems. Plaintiffs allege that TSI and Krevanko intentionally interfered with proposed and existing economic relationships between plaintiffs and their customers [First Amended Complaint, ¶ 44], and engaged in deceptive business practices constituting unfair competition [*Id*., ¶ 45]. Plaintiffs believe that such intentional interference and deceptive business practices relate at least to the accused RazorOptimal systems.

Plaintiffs also allege that TSI has willfully infringed the patents-in-suit [First Amended Complaint, ¶ 36], and plaintiffs plan to direct discovery relating to willful infringement, among other things, to Krevanko's knowledge of a proprietary printer design that TSI incorporated into the accused RazorOptimal systems several months after Krevanko joined TSI, but before the printer design was publicly disclosed by the sale of plaintiffs' product. Plaintiffs also contend that they are entitled to a preliminary injunction enjoining TSI and Krevanko from infringing the patents-in-suit, from misappropriating plaintiffs' trade secrets, from interfering with plaintiffs' prospective and existing business relationships, and from engaging in unfair competition by inducing sales of TSI products to plaintiffs' customers [First Amended Complaint, ¶¶ 2, 6, 11

and 13 of Prayer for Relief]. The focus of the preliminary injunction motion plaintiffs plan to file will be the accused RazorOptimal systems.

To determine whether or not defendants' motion to transfer should be granted, the Court will need to consider, among other things, the parties' contacts with the forum, the differences in the costs of litigation in the two forums, the availability of compulsory process to compel attendance of non-party witnesses, and the ease of access to sources of proof. Plaintiff Precision is a Washington corporation with a principal place of business in Vancouver, Washington [First Amended Complaint, ¶ 1], which is about 15 miles north of Portland, just across the Columbia River and traditionally considered part of the Portland metropolitan area. Plaintiff TigerStop is an Oregon corporation having a principal place of business in Portland. [*Id.* ¶ 2.] Defendant Krevanko is believed to reside in West Linn, Oregon, located about 20 miles south of Portland, and is employed as defendant TSI's West Coast Sales Representative, based in TSI's western regional office in Portland (Exhibit E to plaintiffs' First Amended Complaint is a published press release announcing the formation of this office). This office presumably exists for the purpose of offering for sale and selling TSI's products, including the accused products. Defendant TSI is an Iowa corporation with a principal place of business in Ames, Iowa.

Three of the inventors named on the patents-in-suit, Spencer Dick, David Morgan, and Stuart Aldrich, all reside in Portland. Two of the other named inventors, David Lee and Wesley Aday, reside in Vancouver, Washington. One of the inventors, Douglas Malone, resides just outside of Vancouver, in Battleground, Washington. Dick, Aldrich, Lee and Aday are all employed by TigerStop. Morgan and Malone are not employed by either of the plaintiffs.

In order to decide the transfer issue, the Court will also need to consider the availability of witnesses and documents. Shawn Morrill and Scott Brode are sales representatives for

TigerStop that have knowledge of Krevanko's accused acts. Mr. Morrill and Mr. Brode both work and reside in Vancouver, Washington. Pierre Van Rysselberghe is the patent attorney who prosecuted the patents-in-suit. He works and resides in Portland. Additional likely witnesses include former and present TigerStop customers with whom Krevanko and/or TSI have had contact during the course of Krevanko's employment at TSI. These include Mike Minner of Micro Automation in El Monte, California; Ted Emmett of Euro-Tech Services in British Columbia, Canada; Chuck Klor of Klor Machinery, Inc. in Santa Clara, California; Dave Hegger and Kirk Gass of Professional Machinery Group in Tracy, California; Dave Hagan of Northwest Wood Products Machinery in St. Maries, Idaho; and Malan Johnson of Advanced Machinery Systems in Kaysville, Utah. [Declaration of Shawn Morrill ("Morrill Decl.")] All of the documents relating to conception and development of the inventions of the patents-in-suit are located in Precision's Vancouver office. All of the sales documents that will be used to demonstrate that plaintiffs have been damaged by TSI's patent infringement are and will also be located in Precision's Vancouver office.

In deciding the motion to transfer, the Court may also choose to consider the patent experience of the court and the time it takes to get a case to trial. The experience in patent law and general efficiency of the district courts in Oregon and Iowa is similar. According to the Administrative Office of the United States Courts, in the twelve-month period ending September 30, 2006, 40 patent cases were filed in the District of Oregon, 34 were terminated, and 43 were pending. In the same period in the Southern District of Iowa, 24 patent cases were filed, 43 were terminated, and 19 were pending. [Declaration of Peter Heuser ("Heuser Decl."), Ex. A] Thus, both courts have considerable experience with patent law, and hearing the case in Oregon would not be detrimental to defendant TSI receiving a fair trial on the patent infringement claims. Trial

efficiency is also similar in the Oregon and Iowa courts. In the year ending September 30, 2006, the median time interval from filing to termination of a civil case in the District of Oregon was 11.6 months. In the same period, the median time from filing to disposition in the Southern District of Iowa was 10.4 months. [*Id.*]

III.   **ARGUMENT**

    A.   **This Court Has Supplemental Jurisdiction over Plaintiffs' State Law Claims Because the Claims Share a Common Nucleus of Operative Fact with Plaintiffs' Patent Infringement Claims**

This Court has supplemental jurisdiction over plaintiffs' state law claims because such claims are "so related to [plaintiffs' patent] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2006). Supplemental jurisdiction is properly exercised when (i) the state claims derive from a common nucleus of operative fact as the federal claims, (ii) when the state claims would ordinarily be expected to be tried in a single judicial proceeding, and (iii) when the federal issues are substantial. *Thayer v. Nydigger*, 2000 U.S. Dist. LEXIS 1238, *7 (D. Or. 2000) (citing *Executive Software North America v. U.S. District Court*, 24 F.3d 1545, 1552 (9th Cir. 1994)).

In addition to § 1367, this Court has supplemental jurisdiction over plaintiffs' state unfair competition claims under 28 U.S.C. § 1338(b) (2006): "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws" A patent claim is substantially related to an unfair competition claim when "a 'considerable overlap' between the factual bases underlying the [patent] and [unfair competition] claims [are] apparent . . . [and when] at least part of the proof in support of the [unfair competition] claim [is] common to the [patent] claims." *Mattel, Inc. v. Hyatt*, 664 F.2d 757, 760-61 (9th Cir. 1981) (citations omitted).

Finally, this Court has held that "for the purposes of a motion to dismiss, the challenged complaint is construed liberally in favor of the plaintiff, and all factual allegations set forth in that complaint are to be accepted as true." *U.S. Bank Nat. Ass'n v. Franulovic*, 2007 WL 1598091 at *2 (D.Or. June 01, 2007). As described below, if Plaintiffs' factual allegations are accepted as true, Plaintiffs will have established a common nucleus of operative fact between their state law claims and their patent infringement claims, so that dismissal of the state law claims is improper.

### 1.    Defendants' Actions During Krevanko's Employment by TSI Constitute Facts Underlying Both Plaintiffs' State Law Claims and Plaintiffs' Patent Infringement Claims

Here, contrary to defendants' cursory analysis of the facts at issue in the various claims of this action, plaintiffs' state law claims of trade secret misappropriation, tortious interference with business practices, and unfair competition share a common nucleus of operative fact and overlap considerably with plaintiffs' patent infringement claims.

Specifically, plaintiffs' state law claims are all based at least in part upon Krevanko's intimate knowledge of plaintiffs' confidential business plans, customer lists, design ideas, research and development efforts, and patented (or patent-pending) technology, all of which Krevanko obtained through his employment with TigerStop. Plaintiffs have reason to believe that since being subsequently hired by TSI as its Western Region Manager, Krevanko and TSI have used plaintiffs' confidential information to systematically call on TigerStop customers in the western United States and elsewhere, to outbid TigerStop based on Krevanko's knowledge of confidential product pricing, and to appropriate pending TigerStop sales for TSI. At least some of the resulting TSI sales and offers for sale have been of the accused products. In other words, defendants' sales and offers for sale of their products to plaintiffs' customers constitute improper

acts under plaintiffs' state law claims, and also constitute infringing activities under plaintiffs' federal patent infringement claims.

Similarly, the factual bases underlying plaintiffs' claim of willful infringement of the asserted patents, and the calculation of damages resulting from infringement of those patents, both relate directly to plaintiffs' belief that Krevanko and TSI have systematically conspired— and continue to conspire—to use plaintiffs' misappropriated trade secrets to divert sales of Precision's patented technology from TigerStop to TSI. In deciding the issue of willful patent infringement, the totality of the circumstances, including whether there has been a trade secret misappropriation, are to be considered. *See Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc*., 976 F.2d 1559, 1581 (Fed. Cir. 1992). Therefore, TSI's copying of Precision's confidential plans to incorporate a less expensive printer system, and other aspects of the trade secret misappropriation, are all factors a jury should consider when determining willful infringement.

Plaintiffs have indicated that they are filing a motion for preliminary injunction once the pending motion to dismiss and transfer is decided. Krevanko's communications with plaintiffs' customers, and communications between other TSI personnel and plaintiffs' customers based upon input by Krevanko (whether those communications resulted in actual sales or not) may well be relevant to whether plaintiffs have been irreparably injured by TSI's infringement. For example, plaintiffs feel that TSI's RazorOptimal systems are of such low quality that they have the potential of souring customers on the concept of automated systems for optimizing, cutting, and drilling a workpiece. If true, this will go a long way toward showing that plaintiffs have been irreparably injured and are entitled to a preliminary injunction, if word is traveling in this niche of the industry that such systems should be looked upon with suspicion.

Under plaintiffs' patent infringement and state law claims, Krevanko and his associates at TSI will be the subject of considerable discovery, including identification of TigerStop/TSI customers to whom infringing offers for sale have been made, identification of TigerStop/TSI customers to whom actual infringing sales have been made, Krevanko's personal dealings with TigerStop/TSI customers, customer communications of Krevanko's associates with whom he shared Precision/TigerStop information, evidence of copying Precision's patented technology, etc., all of which are related to and provide factual support for both plaintiffs' state law claims and plaintiffs' patent infringement claims.

Defendants rely solely on *Verdegaal Brothers, Inc. v. Union Oil Co. of Calif.*, 750 F.2d 947 (Fed. Cir. 1984), in support of their motion to dismiss plaintiffs' state law claims. [*See* Memorandum ISO Defendants' Second Motion to Dismiss and Transfer, page 4.] However, the facts of *Verdegaal* are easily distinguished from the present case. In *Verdegaal*, the plaintiff originally alleged patent infringement, misappropriation of trade secrets, and unfair competition. 750 F.2d at 949. The plaintiff in that case later conceded that any trade secrets originally subject to allegations were disclosed in the patent-in-suit, and therefore amended its complaint to remove the allegation of trade secret misappropriation. *Id.* Accordingly, neither the district court nor the Federal Circuit analyzed the appropriateness of supplemental jurisdiction pertaining to the trade secret claim. Additionally, on review of the district court's dismissal of the plaintiff's unfair competition claim, the Federal Circuit only determined that the district court had not abused its discretion. The Federal Circuit did not itself analyze the underlying facts. *Id.* at 952.

The present case is more appropriately compared to *Qualcomm, Inc. v. Motorola, Inc.*, 989 F.Supp. 1048 (S.D. Calif. 1997) (granting plaintiff's motion to amend complaint to include a claim of trade secret misappropriation); *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d

1194 (Fed. Cir. 2003) (supporting supplemental jurisdiction over a tortious interference claim);

and *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) (upholding

supplemental jurisdiction for plaintiff's unfair competition claim).

In *Qualcomm*, the plaintiff moved to amend its complaint to add claims of conversion,

theft of trade secrets, and unfair business practices, after learning that a representative of the

defendant had stolen "an upper housing for the 'Q' Phone from one of [plaintiff's] suppliers."

989 F.Supp at 1049. The court found that the item was stolen simply because it "appeared similar

to a patented [defendant] phone." *Id.* at 1051. The court ruled that the theft arose "from the same

set of facts as [plaintiff's] federal claims regarding patent infringement," and thus exercised

supplemental jurisdiction. *Id.* at 1051. In the present case, the facts underlying plaintiffs' trade

secret claims are even more closely related than the facts in *Qualcomm*, so the exercise of

supplemental jurisdiction over the trade secret claims is appropriate.

In *Silent Drive*, the plaintiff alleged both patent infringement and tortious interference.

There, the defendant had sent letters to plaintiff's customers that allegedly "deterred prospective

customer relationships and interfered with existing customer relationships in a manner that was

improper, and caused harm to [the plaintiff]." 326 F.3d at 1200. The Federal Circuit held that the

tortious interference claim satisfied supplemental jurisdiction because it "concerned the efforts of

[the defendants] to prevent [the plaintiff] from manufacturing [its patented products]." *Id.* at

1206. In the present, case the actions of Krevanko and TSI are akin to the defendant's actions in

*Silent Drive*, and therefore the exercise of supplemental jurisdiction over plaintiffs' tortious

interference claims is appropriate.

Finally, in *3D Systems*, the Federal Circuit concluded that "[the] unfair competition

claims go hand-in-hand with [the] patent infringement claims. All of the claims arise out of

[defendant's] sales activity for rapid prototyping equipment, and therefore these claims were properly brought in the district court under the supplemental jurisdiction provision of 28 U.S.C. § 1367." 160 F.3d at 1377 (citing 28 U.S.C. § 1338(b)). In the present case, plaintiffs' unfair competition claims as well as their patent infringement claims arise out of Krevanko's efforts to sell infringing products on behalf of TSI. Therefore, the exercise of supplemental jurisdiction over plaintiffs' unfair competition claims is proper in the present case.

### 2. This Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims for Judicial Economy, Convenience and Fairness to the Parties

A district court's discretion to exercise supplemental jurisdiction over related state law claims is based on "considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The foregoing discussion makes note of the common facts between plaintiffs' patent infringement and state law claims. If the Court were to dismiss the state law claims, there will be at least separate actions in federal and state court, and conceivably there might be actions filed in each state where there is a cause of action set forth. It serves no purpose, and is certainly not more convenient, for the same witnesses to appear and for many of the same documents to be used in multiple actions in different jurisdictions, involving the same parties and the same products. It is far fairer to the litigants and to the third party witnesses to be able to testify and have this matter resolved in a single action in Portland.

### B. Defendants' Motion to Transfer Should Be Denied

### 1. Legal Standards for Transfer

A district court is authorized, "[f]or the convenience of parties and witnesses, in the interest of justice, . . .[to] transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The court has discretion to transfer the action

through "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citations omitted). However, "a plaintiff's choice ordinarily deserves substantial deference," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242; 102 S.Ct. 252, 259 (1981), and "[a] defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Co.*, 127 S.Ct. 1184, 1191 (2007). This Court has held that a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Homer Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d. 1075, 1081 (D. Or. 2001) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

The parties agree that to determine whether transfer is appropriate, courts in the Ninth Circuit should consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (citing *Stewart*, 487 U.S. at 29).

### 2. Krevanko Had an Implied Agreement with TigerStop to Maintain Trade Secrets, and that Agreement Was Negotiated in Oregon

Defendants argue their motion to transfer assuming that their motion to dismiss the state claims is going to be granted. However, as explained above, the Court clearly has supplemental jurisdiction over the state law claims. Therefore, those claims should be considered in deciding the motion to transfer. As far as the first *Jones* factor is concerned, there is no agreement that was "executed." However, there was at least an implied agreement between Krevanko and

TigerStop that Krevanko was obligated to keep his employer's trade secrets confidential, and not to use them for the benefit of the competition. Defendants must recognize that this was particularly true when Krevanko was elevated to National Sales Manager and became part of the senior executive team. In addition, on January 1, 2005, upon Krevanko's promotion to National Sales Manager, Krevanko was presented with an Employment Agreement including both a noncompetition clause and a confidentiality clause making clear Krevanko's duty to maintain the confidentiality of TigerStop's trade secrets. [Declaration of Spencer Dick ("Dick Decl."), Ex. B]. Krevanko verbally agreed to the terms of this contract, but failed to return a signed copy of the Agreement, or the signed copy has been lost, destroyed, or removed. [Dick Decl.]

Furthermore, all of the negotiations leading to Krevanko's employment by TigerStop and his subsequent promotion to National Sales Manager took place in Oregon, and the majority of his employment activities with TigerStop took place in Oregon. These facts weigh against transfer to Iowa. *See Forte Capital Partners v. Harris Cramer*, 2007 WL 1430052 at *4-5 (N.D. Cal. 2007) (holding that retention of defendants by plaintiff in original forum weighs against transfer). Thus, because Krevanko's employment with TigerStop includes a relevant agreement between TigerStop and Krevanko, this factor supports maintaining the case in Oregon.

### 3.    The Oregon Court is More Familiar with Oregon, California, Washington, and Idaho Law

As set forth in paragraphs 7, 8, 37 and 39-45 of the First Amended Complaint, plaintiffs have set forth causes of action under the laws of Oregon, California, Washington, and Idaho. The laws of each of these states is going to be more familiar to a neighboring court in Oregon than to a court in Iowa that rarely is asked to apply the laws of these western states. Therefore, this factor also supports maintaining the case in the Oregon district.

###### 4.    Plaintiffs' Choice of Forum Should Be Afforded Significant Deference

Whether or not defendants' motion to dismiss the state law claims is granted, plaintiffs' choice of forum should be accorded substantial weight. Defendants contend that plaintiffs' choice of forum should be given little or no deference because Oregon is not plaintiffs' home forum. Plaintiffs strongly disagree. Oregon is the home forum of plaintiff TigerStop, and the district court in Portland is by far the geographically closest district court to plaintiff Precision. Furthermore, even if Oregon is not considered plaintiffs' home forum, "*any* plaintiff's selection of a forum is entitled to deference." *Homer Indem. Co. v. Stimson Lumber Co*., 229 F.Supp.2d. 1075, 1085 (D.Or. 2001) (emphasis added). In *Homer*, this Court deferred to the plaintiffs' choice of forum—and accordingly denied a transfer—even though Oregon was not the home forum of any of the plaintiffs, because it found that plaintiffs' choice was driven by logic and convenience, rather than by forum shopping. *Id*. at 1086. As in *Homer*, one of the defendants in this action, Krevanko, is located in Oregon. Moreover, plaintiff TigerStop is located here, as are three of the named inventors, Dick, Morgan and Aldrich. Precision itself and three of the other named inventors, Malone, Lee and Aday, are located in the Portland metropolitan area, just across the Columbia River and within the subpoena power of this Court. Because plaintiffs' choice of forum is driven by logic and convenience, rather than by forum shopping, plaintiffs' choice should be afforded significant deference.

###### 5.    The Parties Each Have Significant Contacts in Oregon Relating to Plaintiffs' Causes of Action

All four parties to this action have significant contacts in Oregon relating to each of plaintiffs' causes of action. Plaintiffs' state law causes of action include trade secret misappropriation, tortious interference with business relations and unfair competition. Regarding trade secret misappropriation, Krevanko acquired plaintiffs' trade secrets while employed by

TigerStop in Oregon. Furthermore, upon information and belief, Krevanko used and/or disclosed plaintiffs' trade secrets while employed as defendant TSI's Western Region Manager in Oregon. Similarly, as set forth in paragraph 41 of the First Amended Complaint, TSI acquired from Krevanko and used plaintiffs' trade secrets in the course of Krevanko's employment by TSI in Oregon.

Regarding tortious interference and unfair competition, according to paragraphs 44 and 45 of First Amended Complaint, Krevanko knowingly interfered with pending and/or actual contracts between plaintiffs and their customers, and conspired with TSI to use plaintiffs' proprietary business plans and product designs to confuse consumers and to unreasonably restrain commerce, all during the course of his employment for TSI in Oregon. In addition, Krevanko acquired his knowledge of plaintiffs' contracts, business plans and product designs during the course of his employment for TigerStop in Oregon. Thus, all parties to this action have significant contacts in Oregon relating to plaintiffs' state law claims.

Regarding plaintiffs' patent infringement claims, the inventions claimed in the asserted patents were conceived and reduced to practice by plaintiffs' employees while employed and residing in the Portland metropolitan area, and the patents were prosecuted by an attorney working and residing in Oregon. In addition, TSI offers for sale and sells the accused products in Oregon, at least at National Builders Hardware Co. ("NBHC") in Portland. Plaintiffs have gathered substantial evidence of patent infringement from NBHC, including a compact disc containing sales literature describing and offering for sale the accused products. Furthermore, as discussed above, defendant TSI maintains a regional office in Portland, which is managed by Krevanko and which presumably exists for the purpose of offering for sale and selling TSI's

products, including the accused products. Thus, all parties have significant contacts with Oregon relating to plaintiffs' patent infringement claims.

### 6. Convenience of the Witnesses Favors Hearing This Action in Oregon

Potential witnesses relating to plaintiffs' state law claims are likely to include a number of individuals residing in Oregon or other western states, because plaintiffs assert that Krevanko committed improper acts while employed as the Western Region Manager for defendant TSI in Portland. These witnesses will likely include Krevanko himself, who works and resides in Portland, and also will likely include TigerStop employees Shawn Morrill and Scott Brode, both of whom are sales representatives for TigerStop with knowledge of Krevanko's accused acts. Mr. Morrill and Mr. Brode both work and reside in Vancouver, Washington. Oregon is a far more convenient forum than Iowa for all of these witnesses.

Additional likely witnesses relating to the state law claims include former and present TigerStop customers with whom Krevanko and/or TSI has had contact during the course of Krevanko's employment with TSI. These include at least Mike Minner of Micro Automation in El Monte, California; Ted Emmett of Euro-Tech Services in Alberta, Canada; Chuck Klor of Klor Machinery, Inc. in Santa Clara, California; Dave Hegger and Kirk Gass of Professional Machinery Group in Tracy, California; Dave Hagan of Northwest Wood Products Machinery in St. Maries, Idaho; and Malan Johnson of Advanced Machinery Systems in Kaysville, Utah. [Morrill Decl.] Through discovery, plaintiffs expect to uncover additional improper contacts between defendants and plaintiffs' customers in other portions of the western United States and Canada. Because Krevanko is TSI's Western Region Manager, Oregon will be a more convenient forum for both the known and probable additional customer witnesses.

Potential witnesses relating to plaintiffs' federal patent infringement claims will likely include some or all of the inventors listed on the asserted U.S. patents. As noted above, named inventors Dick, Morgan and Aldrich reside in the Portland metropolitan area**,** and inventors Malone, Lee and Aday reside just across the Columbia River and within the subpoena power of this Court.[1] Thus, Oregon would be a much more convenient forum than Iowa for these witnesses. The only inventor that does not reside in the Portland metropolitan area, Mr. Lankamp, lives in the Netherlands, and therefore is not close to either Oregon or Iowa.

Aside from the named inventors, a number of additional Precision and TigerStop employees are likely witnesses in the patent infringement action, because they have knowledge of the conception and reduction to practice of the inventions claimed in the asserted patents, or other knowledge relevant to infringement, patent validity and/or damages. These potential witnesses include at least Spencer Dick, President of TigerStop who resides in Portland; Josh Vande Krol, Research and Development Manager of Precision who resides in Vancouver, Washington; and Shawn Morrill, Western Regional Sales Manager for TigerStop, who also resides in Vancouver, Washington. A further possible witness is Pierre Van Rysselberghe, the prosecuting attorney of the patents at issue, who also works and resides in Portland. Oregon is a much more convenient forum for all of these likely witnesses.

With specific regard to infringement by the accused products, several important witnesses and sources of proof are located in or near Oregon. Krevanko, as Western Regional Sales Manager for TSI, will likely be a witness with regard to sales and offers for sale of the accused products. Krevanko works in Portland and resides in West Linn, Oregon, approximately 20 miles from the federal courthouse in Portland. In addition, plaintiffs' third party witnesses relating to

---

[1] As noted previously, Vancouver, Washington is approximately 15 miles from Portland. Battleground, Washington, the listed residence of Mr. Malone, is approximately 25 miles from Portland.

patent infringement will likely include dealers and purchasers of the accused systems, at least some of whom are located in Oregon. For example, NBHC of Portland sells and offers for sale the accused products, and plaintiffs expect to call one or more employees of NBHC to prove patent infringement.

## 7. Convenience to the Parties Favors Hearing This Action in Oregon

TigerStop is an Oregon corporation, with its principal place of business in Portland. Thus, the federal district court in Portland is clearly the most convenient forum for TigerStop. Precision is a Washington corporation, with its principal place of business in Vancouver, Washington. Vancouver is just across the state line from Portland. Thus, the federal district court in Portland is the most convenient forum for Precision.

Again, Krevanko resides in West Linn, so plaintiffs' choice of forum is not inconvenient for Mr. Krevanko. TSI is an Iowa corporation with its principal place of business in Ames, Iowa. However, upon information and belief, TSI also has a western regional office in Portland. Exhibit E to plaintiffs' First Amended Complaint is a published press release announcing the formation of this office. Because three of the four parties are based within the Portland metropolitan area, and because the remaining party has a regional office located in Portland, convenience of the parties strongly favors keeping this action in the Oregon district.

## 8. Availability of Compulsory Process Favors Hearing This Action in Oregon

The subpoena power of a district court over a person who is neither a party nor an officer of a party is limited to the state in which the trial is held or, if the person is located out of state, to 100 miles from the location of the court. Fed.R.Civ.P. 45(c)(3)(A)(ii) (2006). In the present case, a number of important third party witnesses are located within the subpoena power of the federal district court in Portland, but not within the subpoena power of the district court in Des Moines,

Iowa. These witnesses include at least: (1) David Morgan, a listed inventor on all three of the asserted patents, who would be expected to testify as to the conception and reduction to practice of the inventions claimed in the asserted patents. Mr. Morgan resides in Portland and is not employed by plaintiffs; (2) Mr. Douglas Malone, a listed inventor on one of the asserted patents, who would be expected to testify as to the conception and reduction to practice of the inventions claimed in that patent.  Mr. Malone resides in Battleground, Washington, within the subpoena power of the district court in Portland, and is not employed by plaintiffs; (3) Mr. Pierre Van Rysselberghe, the prosecuting attorney for the asserted patents, who would be expected to testify as to Precision's knowledge of the prior art and as to other issues related to patent validity. Mr. Van Rysselberghe works and resides in Portland; and (4) one or more employees of NBHC, a Portland dealer of TSI's accused products. As a primary source of evidence of infringement, the NBHC employee(s) would be expected to testify as to sales and offers for sale of the accused products.

Plaintiffs also note that although TigerStop—the sole U.S. licensee of Precision's patented technology—is currently named as a plaintiff in this action, if defendants prevail in their future efforts to have TigerStop dismissed as a plaintiff, then TigerStop officers and employees would be critical third party witnesses on at least the issue of damages. These witnesses would be expected to testify, for example, as to profit margins, lost sales, and a reasonable royalty on sales of the accused products.

In contrast to the identification of the above third party witnesses, defendants, in their moving papers, fail to identify a single third party witness who would be subject to compulsory process in Iowa.

This "availability of compulsory process," in combination with the fact that so many of the likely witnesses are based in the West, as well as the fact that all of the documents relating to the conception, development, sales, expenses and profits relating to the patented products, and the preparation and prosecution of the patents-in-suit are present in the Portland metropolitan area, clearly supports *Jones* factor (8) "the ease of access to sources of proof." *Jones v. GNC Franchising, Inc*., 211 F.3d at 499 (9th Cir. 2000).

### 9.    Differences in the Cost of Litigation Do Not Favor Transfer

Defendants contend that the costs of litigation would be lower if the case were heard in Iowa. However, given the fact that most of the witnesses are in the West, this cannot possibly be true. Moreover, studies show that the Oregon district has at least as much experience as the Southern District of Iowa in trying patent cases, and the time to trial is about the same in the two venues. According to the Administrative Office of the United States Courts, in the twelve-month period ending September 30, 2006, 40 patent cases were filed in the District of Oregon, 34 were terminated, and 43 were pending. In the same period in the Southern District of Iowa, 24 patent cases were filed, 43 were terminated, and 19 were pending. [Heuser Decl. Ex. A]. Thus, both courts have considerable experience with patent law, and hearing the case in Oregon would not be detrimental to defendant TSI receiving a fair trial on the patent infringement claims. Trial efficiency is also similar in the Oregon and Iowa courts. In the year ending September 30, 2006, the median time interval from filing to termination of a civil case in the District of Oregon was 11.6 months. In the same period, the median time from filing to disposition in the Southern District of Iowa was 10.4 months. [Heuser Decl. Ex. A]. Therefore, based on the potential speed of resolution in each district, hearing the case in Oregon would not harm the interest of justice, and would certainly not be any more costly to the parties.

C.    **Plaintiffs' Tortious Interference and Unfair Competition Claims Are Not Preempted by State Trade Secret Laws**

Defendants state that plaintiffs' claims for tortious interference with business relations and unfair competition both remain preempted and should be dismissed as stated in Defendants' original Motion to Dismiss and Transfer. However, the trade secret laws of Oregon, Washington, California and Idaho do not preempt plaintiffs' tortious interference or unfair competition claims, because those claims do not rely solely on defendants' alleged acts of trade secret misappropriation. Although some of plaintiffs' allegations of tortious interference and unfair competition are based in part on defendants' conduct in relation to Precision and TigerStop customers, plaintiffs do not allege that all of defendants' acts of tortious interference and unfair competition rest on the misappropriation of plaintiffs' customer lists or other trade secrets. Rather, plaintiffs accuse Krevanko and TSI of, *inter alia*, "knowingly interfering with pending and/or actual contracts for products between plaintiffs and their customers," and using Krevanko's status as the former National Sales Manager for TigerStop to confuse consumers and to unreasonably restrain commerce [First Amended Complaint, ¶¶ 44-45]. These acts are alleged regardless of whether defendants' contact with plaintiffs' customers resulted from trade secret misappropriation, and thus do not rely upon plaintiffs' trade secret claims to entitle plaintiffs to relief. Therefore, plaintiffs' claims of tortious interference and unfair competition are not preempted by trade secret law, and should not be dismissed on that basis.

IV.    **CONCLUSION**

This Court has supplemental jurisdiction over the state law claims because plaintiffs' state law claims share a common nucleus of operative fact with plaintiffs' patent infringement claims. Therefore, defendants' motion to dismiss the state law claims should be denied. With respect to defendants' motion to transfer, they have not demonstrated that plaintiffs' choice of

forum should be disturbed by transferring the case to Iowa. A majority of the potential witnesses and documents appear to be located in the Portland metropolitan area, convenient to and within the subpoena power of this Court. Therefore, defendants' motion to transfer should also be denied. Finally, defendants' motion to dismiss the tortious interference and unfair competition claims are not preempted because allegations in addition to those that are part of the trade secret misappropriation claim are included in the First Amended Complaint. Therefore, defendants' motion to dismiss based upon preemption should be denied as well.

Dated: July 12, 2007                                KOLISCH HARTWELL, P.C.


                                                    _____/s/ Peter E. Heuser_____
                                                    Peter E. Heuser
                                                    Attorneys for Plaintiff
                                                    520 S.W. Yamhill Street, Ste. 200
                                                    Portland, Oregon 97209
                                                    (503) 224-6655
                                                    Fax: (503) 225-6679