IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PRECISION AUTOMATION, INC,  
a Washington Corporation,  
and TIGERSTOP, LLC, an Oregon  
Corporation,

        Plaintiffs,

v.

TECHNICAL SERVICES, INC., an  
Iowa Corporation, and DAVID  
KREVANKO, an individual,

        Defendants.

07-CV-707-AS

OPINION AND ORDER

PETER E. HEUSER  
PIERRE C. VAN RYSSELBERGHE  
ELIZABETH A. TEDESCO  
SHAWN J. KOLITCH  
Kolisch Hartwell, P.C.  
200 Pacific Building  
520 S.W. Yamhill Street  
Portland, OR 97204  
(503) 224-6655

        Attorneys for Plaintiffs

1 - OPINION AND ORDER

**KAREN L. O'CONNOR**
Barran Liebman, LLP
601 S.W. Second Avenue
Suite 2300
Portland, OR 97204
(503) 228-0500

**CHRISTINE LEBRON-DYKEMAN**
**R. SCOTT JOHNSON**
McKee, Voorhees & Sease, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, IA 50309
(515) 288-3667

       Attorneys for Defendant Technical Services, Inc.

**JAY RICHARD CHOCK**
**TIMOTHY B. HERING**
Dunn Carney Allen Higgins & Tongue, LLP
851 S.W. Sixth Avenue
Suite 1500
Portland, OR 97204-1357
(503) 306-5313

       Attorneys for Defendant David Krevanko

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (#44).  For the reasons that follow, the Court **DENIES** Plaintiffs' Motion.

## BACKGROUND

    Plaintiff Precision Automation, Inc., is a manufacturer of stop/gauge and pusher systems, which are "computerized systems for optimizing the processing of materials use in manufacturing products such as cabinets and furniture."  Plaintiff TigerStop,

2 - OPINION AND ORDER

LLC, is Precision's United States affiliate and sole licensee of the patents at issue.  Defendant Technical Services, Inc. (TSI) is a competitor of Plaintiffs in the processing-equipment manufacturing industry.

Defendant David Krevanko was an employee of TigerStop from August 2002 through August 2006 and held the positions of Customer Service Representative, Regional Sales Representative, and National Sales Manager.  Krevanko is currently employed by TSI as a West Coast Sales Representative.  Plaintiffs contend Krevanko had access to confidential and proprietary information belonging to TigerStop during his employment with TigerStop.

On October 7, 2003, Patent 6,631,006 ('006 Patent) was issued to Precision for systems and methods of marking materials for automated processing.  On April 18, 2006, Patent 7,031,789 ('789 Patent) was issued to Precision for process management systems and methods.  On February 6, 2007, Patent 7,171,738 ('738 Patent) was issued to Precision for systems for processing workpieces.

On May 14, 2007, Precision filed an action in this Court against TSI and Krevanko in which it alleged (1) TSI's RazorOptimal and RazorOptimal Crayon material-processing systems infringe the '006, '789, and '738 Patents; (2) Krevanko misappropriated Precision's trade secrets; (3) TSI misappropriated Precision's trade secrets; (4) Defendants used

Precision's trade secrets to interfere with Precision's business relationships; and (5) Defendants used Precision's trade secrets to unfairly compete with Precision.  Precision sought a declaration that TSI infringed the '006, '789, and '738 Patents and moved for preliminary and permanent injunctions against Defendants for further infringement of Precision's patents; preliminary and permanent injunctions against Defendants for further use or disclosure of Precision's trade secrets; preliminary and permanent injunctions against Defendants for further unfair trade practices; an accounting by Defendants; damages, including punitive and exemplary damages; and attorneys' fees.

    On June 5, 2007, Defendants filed a Motion to Dismiss or Transfer Plaintiffs' Complaint.  Defendants asserted Plaintiffs' claims for tortious interference with business relations and unfair competition were preempted by state trade-secrets laws and that this matter should be transferred to the Southern District of Iowa.

    On June 14, 2007, the parties filed a Stipulation for Filing First Amended Complaint.[1]  On June 20, 2007, Precision and

---

[1] The Court did not enter an Order denying as moot Defendants' June 5, 2007, Motion to Dismiss, and the Stipulation does not provide the June 5, 2007, Motion to Dismiss is moot. Nevertheless, the June 5, 2007, Motion to Dismiss seems to have been superseded by Defendants' Second Motion to Dismiss and Transfer because it seeks substantially the same relief on substantially the same grounds.

4 - OPINION AND ORDER

TigerStop filed a First Amended Complaint against Defendants in which they alleged (1) TSI's RazorOptimal and RazorOptimal Crayon material-processing systems infringe the '006, '789, and '738 Patents; (2) Krevanko misappropriated Precision's trade secrets; (3) TSI misappropriated Plaintiffs' trade secrets; (4) Defendants tortiously interfered with Plaintiffs' business relationships; and (5) Defendants conspired to use Plaintiffs' trade secrets to unfairly compete with Plaintiffs.  Plaintiffs seek a declaration that TSI infringed the '006, '789, and '738 Patents and move for preliminary and permanent injunctions against Defendants for further infringement of Precision's patents; preliminary and permanent injunctions against Defendants for further use or disclosure of Precision's trade secrets; preliminary and permanent injunctions against Defendants for further unfair trade practices; an accounting by Defendants; damages, including punitive and exemplary damages; and attorneys' fees.

On June 28, 2007, Defendants filed a Second Motion to Dismiss and Transfer in which they again asserted Plaintiffs' claims for tortious interference with business relations and unfair competition were preempted by state trade-secrets laws and that this matter should be transferred to the Southern District of Iowa.

On September 28, 2007, Magistrate Judge Donald C. Ashmanskas issued Findings and Recommendation in which he recommended the

Court deny Defendants' Second Motion to Dismiss.  On October 1, 2007, the Magistrate Judge issued Amended Findings and Recommendation to add TigerStop as a Plaintiff.  Defendants objected in part to the Amended Findings and Recommendation.  On November 1, 2007, the Magistrate Judge referred the Amended Findings and Recommendation to this Court.

On November 7, 2007, Plaintiffs filed a Motion for Preliminary Injunction in which they seek an order "enjoining defendants . . . from manufacturing, offering for sale, selling, or using TSI's RazorOptimal and RazorOptimal Crayon material processing systems. . . and from further disclosure or use of Plaintiffs' trade secrets."  On November 9, 2007, the Magistrate Judge referred Plaintiffs' Motion for Preliminary Injunction to this Court.

On December 14, 2007, the Court issued an Opinion and Order adopting in part and declining to adopt in part the Amended Findings and Recommendation.  Accordingly, the Court granted Defendants' Second Motion to Dismiss as to Plaintiffs' unfair-competition claim and denied Defendants' Motion as to Plaintiffs' tortious-interference claim.

## STANDARDS

Injunctive relief in patent cases is authorized by 35 U.S.C. § 283, which provides an injunction may be granted "in accordance

6 - OPINION AND ORDER

with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

The standard for the issuance of a preliminary injunction in a patent case is determined by the law of the Federal Circuit because motions for preliminary injunction involve substantive questions unique to patent law.  *Smith & Nephew, Inc. v. Biomet, Inc.*, No. 05-611-KI, 2005 WL 3132313, at *3 (D. Or. Nov. 21, 2005)(citing *Hybritech, Inc. v. Abbott Labs*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

"A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'"  *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004)(quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).

> The four factors relevant to the district court's decision to grant or deny a preliminary injunction are "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest."

*Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1200-01 (Fed. Cir. 2007)(quoting *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003)).  "Although granting a preliminary injunction requires analysis of all four factors, a trial court may deny a motion based on a patentee's failure to

7 - OPINION AND ORDER

show any one of the four factors . . . without analyzing the others." *Smith & Nephew,* 2005 WL 3132313, at *3 (citing *Jack Guttman, Inc. v. Kopykake Enters.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002)).

"The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court." *Amazon.com, Inc. v. Barnsandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)(citing *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996)). *See also PHG Tech., LLC v. St. John Cos., Inc.,* 469 F.3d 1361, 1365 (Fed. Cir. 2006)(same).

## DISCUSSION

Defendants assert Plaintiffs are not entitled to a preliminary injunction because (1) Plaintiffs have not shown they will suffer irreparable harm, (2) Plaintiffs are not likely to succeed on the merits of its patent-infringement claims, (3) the balance of hardships tips in Defendants' favor, and (4) public interest is not served by granting an injunction in this case because Plaintiffs' patents are invalid.

**I.  Plaintiffs' Motion as to Disclosure of Trade Secrets**.

As noted, Plaintiffs seek an order, in part, to enjoin Defendants from "further disclosure or use of Plaintiffs' trade secrets." In their Motion, Memorandum, Reply, and supporting

materials, however, Plaintiffs do not identify any standard for evaluating their request for preliminary injunction enjoining Defendants from disclosing Plaintiffs' trade secrets nor do they offer facts or evidence to support their request for a preliminary injunction.  Instead Plaintiffs' materials address only their request for preliminary injunction as to their patents and Defendants' alleged infringing products.  Similarly, Defendants also fail to identify the standard for evaluating Plaintiffs' request for a preliminary injunction or to offer facts or evidence to support their position as to Plaintiffs' request for preliminary injunction.

The Court, therefore, denies Plaintiffs' Motion for Preliminary Injunction enjoining Defendants from disclosing trade secrets for lack of evidence in the record to support the issuance of an injunction.

## II.  Irreparable-Harm Standards.

In the past, the Federal Circuit has concluded "the right to exclude" in the Patent Act justified a presumption that irreparable harm resulted when a valid and enforceable patent was infringed.  In 2006, however, the Supreme Court did away with that presumption and concluded "the right to exclude others from making, using, offering for sale, or selling the invention" under the Patent Act "alone [does not] justif[y] [a] general rule in favor of permanent injunctive relief in patent cases."  *eBay v.*

9 - OPINION AND ORDER

*MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006). Although in *eBay* the patentee requested a permanent injunction, the parties here concede the principle set out in *eBay* likely applies with equal force to requests for preliminary injunctions. The Court agrees. Accordingly, Plaintiffs must offer sufficient evidence of irreparable harm before the Court will grant Plaintiffs' Motion for Preliminary Injunction.

In *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368 (Fed. Cir. 2006), the Federal Circuit affirmed the district court's grant of a preliminary injunction when the patentee offered substantial evidence of irreparable harm stemming from "irreversible price erosion, loss of good will, potential lay-offs of [the patentee's] employees, and the discontinuance of clinical trials that are devoted to other medical uses for [the patented product.]" *Id*. at 1381. Similarly, in *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007), the Federal Circuit affirmed the district court's grant of an injunction when the district court "considered detailed testimony" and the record "contain[ed] evidence of price erosion as well as lost opportunities to sell other services to the lost customers" in addition to evidence of lost sales. *Id*. at 1310.

**III. Plaintiffs Have Not Established Irreparable Harm**.

In their Memorandum in Support of their Motion for Preliminary Injunction, Plaintiffs contend they are experiencing

10 - OPINION AND ORDER

"an irreparable loss of customer goodwill" due to the misperception that Defendants rather than Plaintiffs invented Precision's patented products. Plaintiffs also assert they "will lose an unquantifiable part of their rightful share of the material processing system market" if the Court does not grant their request for an injunction. Plaintiffs assert they are losing "an unquantifiable amount of . . . sales of unpatented ancillary items made as a result of the sale of a patented project, such as servicing, accessories and spare parts." Finally, if the Court does not grant a preliminary injunction in this matter, Plaintiffs contend "continued sales of the infringing TSI products would encourage other would-be infringers to adopt and sell plaintiffs' patented technologies, further undermining plaintiffs' market position."

Plaintiffs, however, have not offered any evidence of customer confusion, complaints, or lost sales that would support a finding of lost goodwill. The sole support for Plaintiffs' assertions of irreparable injury is in the form of two declarations: the Declaration of Shawn Morrill, the Western Regional Sales Representative for TigerStop; and the Declaration of Spencer Dick, President and Chief Executive Officer of TigerStop.

In his Declaration, Morrill testifies he is aware that Krevanko has contacted six TigerStop customers, and these

11 - OPINION AND ORDER

contacts "may have resulted in lost sales for TigerStop."
Morrill Decl. ¶¶ 3-4.

In his Declaration, Dick testifies:

> Although we reduced the '738 patent invention to practice at least as early as 2003, Precision has spent the past several years fine tuning the commercial "TigerSaw" product that would embody this invention. . . .
>
> Because this multi-station TigerSaw product would be new to the market, we felt it was essential that the product work reliably . . . . We planned to identify a few customers as "early adopters" of the product. These customer would pay a premium to be the first in the industry to benefit from the advantages of the TigerSaw. Through their use of the product, the "early adopters" would demonstrate the value of the TigerSaw to the rest of the market and establish a price commensurate with the investments Precision and TigerStop have made in the technology. The TigerSaw was first offered for sale at the Association of Woodworking & Furnishings Suppliers trade show in July 2007.
>
> Before TigerStop was able to introduce the TigerSaw to the market, TSI was offering its RazorOptimal product . . . .
>
> TSI has irreparably damaged the market for these kinds of multi-station processing systems by offering them at a price far lower than what TigerStop had intended. In fact, we have not sold any of our TigerSaw products covered by the '738 patent because we have been unable to command a fair price in the market. Because of TSI's actions, it is simply not profitable for TigerStop to sell the TigerSaw with multiple processing stations at this point.
>
> TSI's rushing of an inferior product into the market has irreparably harmed both the reputation of the multi-station processing product itself and TigerStop's reputation as an industry leader in innovation.

12 - OPINION AND ORDER

>           Precision and TigerStop will also suffer the
>      irreparable loss of sales of related products,
>      such as other positioning devices, as well as
>      perhaps the complete loss of customers who sought
>      such multi-station material processing technology
>      but purchase from TSI rather than waiting for
>      Precision and TigerStop to complete the
>      development of their machine.

Dick Decl., at ¶¶ 15-20.

To the extent Dick's Declaration offers evidence of irreparable harm, it does so only with respect to the '738 Patent. Dick does not testify about a decrease in sales, harm to Defendants' market share, or any other irreparable harm associated with the '006 or '789 Patents. The Court, therefore, concludes Plaintiffs have not offered any evidence of irreparable harm with respect to the '006 or '789 Patents.

In addition, the testimony of Morrill and Dick does not provide "substantial evidence of irreparable harm." Although Dick testifies TigerStop's reputation as an industry leader has been harmed and TigerStop may lose sales of related products or "perhaps" completely lose customers for the technology protected by the '738 Patent, neither Dick nor Plaintiffs provide evidence of any specific examples of such lost sales.

Finally, the testimony of Dick and Morrill also involves speculation about possible future harm that is not supported by evidence in the record such as customer statements, sales data, or market-share information. The Federal Circuit has made clear

>           [o]nly a viable threat of serious harm that cannot

13 - OPINION AND ORDER

> be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined, a preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great.

*Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 996 (Fed. Cir. 1985)(citations and internal quotation marks omitted).  In addition, other courts, relying on the reasoning of the Federal Circuit, have noted

> "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial . . . .  Indeed, the district court's reliance on possible market share loss would apply in every patent case where the patentee practices the invention.  Moreover, [the defendant] is acknowledged to be a large and financially responsible company which would be answerable in damages."

*Altana Phama AG v. Teva Pharm. USA, Inc.*, Civil Action No. 04-2355(JLL), 2007 WL 2688917, at *14 (D.N.J. Sept. 6, 2007) (quoting *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991)).

In *Altana*, the patentees asserted they would suffer irreparable harm if an injunction did not issue because they would suffer

> irreversible price erosion, loss of substantial profits . . ., and an unrecoverable decrease in market share and pricing as well as experience an inability to service its debts, the layoff of employees, and the loss of research opportunities, the "halting of pediatric development of [the patented product], and the loss of research opportunities.

*Altana*, 2007 WL 2688917, at *13. The court, however, concluded the patentees had not established irreparable harm sufficient to merit a preliminary injunction. *Id.,* at *13. The court noted "the Federal Circuit . . . ha[s] declared that the types of harms advanced by Plaintiffs in the instant lawsuit are not irreparable and thus, cannot form the basis for granting an injunction." *Id*., at *14. (citing *Eli Lilly and Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996)). The court recognized

> the Federal Circuit has reached certain decisions which may conflict with the language used in *Eli Lilly* and *Nutrition 21*. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381-83 (Fed. Cir. 2006); *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1565-66 (Fed. Cir. 1996). In both of these cases, the Federal Circuit indicated that the district court *did not clearly err* in finding that the plaintiff established irreparable harm by arguing some of the same types of harms Plaintiffs allege here-loss of revenue, loss of research opportunities, irreversible price erosion, etc. It does not appear that such decisions contradict *Eli Lilly* or *Nutrition 21*. Instead, the Federal Circuit's decisions in *Bio-Technologies* and *Sanofi-Synthelabo* illustrate the fact that the Federal Circuit reviews the district court's findings in this regard with deference and only overturns a district court's exercise of its discretion on the issue of irreparable harm if such was clearly erroneous. *See Novartis Corp. v. Teva Pharm. USA, Inc.*, Nos. 04-4473, 06-1130, 2007 WL 1695689, at *27 (D.N.J. June 11, 2007)(citing to *Sanofi-Synthelabo* and stating that "[a]lthough there might exist many examples of courts granting preliminary injunctions where these factors were present, it does not necessarily follow that the possibility of such factors in such matters demanded a preliminary injunction. Similarly, the possibility of these factors in the instant matter does not alone demand a preliminary injunction,

15 - OPINION AND ORDER

> especially where such losses, by all measure,
> appear to be calculable").

*Altana*, 2007 WL 2688917, at *14 n.28 (emphasis in original).

It is questionable here whether Plaintiffs have alleged the kinds of harm that are irreparable. Even if they were the kinds of harm that are irreparable, Plaintiffs have not offered "substantial evidence" of irreparable harm. Thus, Plaintiffs have not satisfied one of the four factors relevant to granting a preliminary injunction as set out in *eBay* and *Abbott Laboratories*. As noted, a court "may deny a motion [for preliminary injunction] based on a patentee's failure to show any one of the four factors . . . without analyzing the others." *Smith & Nephew*, 2005 WL 3132313, at *3.

Accordingly, in the exercise of its discretion, the Court denies Plaintiffs' Motion for Preliminary Injunction because Plaintiffs have not established they will suffer irreparable harm in the absence of a preliminary injunction. *See, e.g., Amazon.com*, 239 F.3d at 1350 ("a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.,* likelihood of success on the merits and irreparable harm."). Instead, this matter should proceed forward on its merits in the ordinary course.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiffs' Motion for

16 - OPINION AND ORDER

Preliminary Injunction (#44).

IT IS SO ORDERED.

DATED this 14th day of December, 2007.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER