FILED '09 JAN 22 14:31 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PRECISION AUTOMATION, INC., a
Washington Corporation, TIGERSTOP
LLC, an Oregon Corporation,

                Plaintiffs,

          v.

TECHNICAL SERVICES, INC., an Iowa
Corporation, and DAVID KREVANKO, an
individual,

                Defendants.

Civ. No. 07-707-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

    Defendant David Krevanko ("Krevanko") moves the court for an award of attorney fees and

expenses for defending against claims brought by Precision Automation, Inc. ("Precision") and

TigerStop LLC ("TigerStop") (collectively "Plaintiffs"). Krevanko asserts an entitlement to attorney

fees under Oregon Revised Statutes ("ORS") 646.467 and Federal Rules of Civil Procedure

("Rules") 54 and 37.

*Factual Background*

On May 14, 2007, Precision filed suit against Technical Services, Inc. ("TSI") and Krevanko.
Precision alleged claims of patent infringement, trade secret misappropriation, willful trade secret
misappropriation, tortious interference with business relations, and unfair competition. On June 20,
2007, Precision amended its complaint to add TigerStop, LLC as a plaintiff. The court dismissed
Plaintiffs unfair competition claim on December 14, 2007. On May 15, 2008, Plaintiffs again
amended their complaint to add a claim of copyright infringement.

In a February 25, 2008, response to Krevanko's first request for admissions, TigerStop denied
that Krevanko had not signed a covenant not to compete, a confidentiality agreement, or a non-
disclosure agreement with Tigerstop. On August 15, 2008, Plaintiff dismissed with prejudice patent
infringement claims arising from U.S. Patent No. 6,631,006. Also on August 15, 2008, Plaintiffs
deposed Krevanko. In the course of the deposition, Plaintiffs gave Krevanko a document marked
deposition Exhibit 2 (hereinafter referred to as "Exhibit 2"). Exhibit 2 was a form employment
agreement dated January 1, 2005, which displayed Krevanko's name and address under the "Parties"
heading, and bearing the words "Tiger Stop Current Emp Agreements" in the footer. Exhibit 2 was
not signed by any party, including Krevanko, who testified that he had not seen Exhibit 2 before
Plaintiffs' counsel presented it to him at deposition.

On September 19, 2008, the parties filed a stipulated dismissal of the trade secret and tortious
interference with business relations claims, as well as a stipulated dismissal of Kreavnko as to all
claims. On September 22, 2008, in lieu of a forensic examination by Krevanko of TigerStop's
computer system, TigerStop admitted that Exhibit 2 was created after August 30, 2006, the day
Krevanko's employment with TigerStop terminated.

FINDINGS AND RECOMMENDATION        2                                    {KPR}

*Discussion*

Krevanko claims entitlement to attorney fees on two grounds: (1) the Oregon Uniform Trade

Secrets Act ("Oregon UTSA"), ORS 646.467 and (2) Rules 37 and 54.

1.    Attorney Fees Under ORS 646.467

Under Oregon UTSA, "[t]he court may award reasonable attorney fees to the prevailing party

if: (1) A claim of misappropriation is made in bad faith." OR. REV. STAT. 646.467 (2007).  The

parties do not dispute that Krevanko is a prevailing party, for purposes of this motion, which motion

is based on the parties' September 19, 2008, Joint Stipulation to Dismiss Trade Secret and Tortious

Interference Claims. The stipulation dismissed Plaintiffs' trade secret misappropriation and tortious

interference claims with prejudice and read, in relevant part: "Because David Krevanko is not a

party to any remaining claim, the parties also hereby stipulate to David Krevanko's dismissal as a

defendant in this action." (Docket No. 166.) *See Telephone Mgmt. Corp. v. Gillette*, 2001 U.S. Dist.

LEXIS 4573, at *8 (D. Or. Feb. 20, 2001) ("Based on [plaintiff]'s dismissal of its trade secrets claim,

and the fact that it cannot articulate a single trade secret that was disclosed by [defendant], it is

clearly appropriate to consider [defendant] the prevailing party under the trade secrets claim."); *cf.*

*Highway Equipment Company, Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) ("We have

likewise held that a defendant was the prevailing party for purposes of costs under Rule 54 where

the plaintiff voluntarily dismissed its case against one defendant with prejudice." (citing *Power*

*Mosfet Techs., L.L.C. v. Siemens AGI*, 378 F.3d 1396, 1416 (Fed. Cir. 2004))).

Under this Oregon UTSA provision authorizing attorney fees for claims made in bad faith,

a court may "award reasonable attorney fees to a prevailing party as a deterrent to specious claims

of misappropriation." *Telephone Mgmt. Corp.*, 2001 WL 210179, at *2.  Oregon courts have not

FINDINGS AND RECOMMENDATION        3                              {KPR}

addressed the specific contours of a bad faith claim of misappropriation, so the court looks to other

courts interpreting a similar provision in the Uniform Trade Secret Act.  In general, courts have

adopted a two-part test to establish bad faith: "[(1)] objective speciousness of the plaintiff's claim

and [(2) plaintiff's] subjective misconduct in bringing or maintaining a claim for misappropriation

of trade secrets." *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts, et al.*, 222 F.

Supp. 2d 733, 744 (D. Md. 2002) (quoting *Gemini Aluminum Corp. v. California Custom Shapes,*

*Inc.*, 95 Cal. App. 4th 1249, 1262 (2002)).  This test was earlier applied in *Stilwell Dev. Inc. v. Chen,*

11 U.S.P.Q.2d 1328, 1331 (C.D. Cal. 1989), interpreting California's version of the UTSA, where

the district court "review[ed] plaintiffs' conduct on the standards of subjective misconduct and

objective speciousness."

     *a.*    *Objectively Specious*

     Krevanko argues that Plaintiffs' trade secret claim against him completely lacked merit

because the information reportedly disclosed did not include trade secrets and, in any event,

Krevanko did not sign a confidentiality agreement prohibiting him from disclosing non-trade secret

information.  Plaintiffs argue that they dismissed the claim because, through discovery, they learned

that the potential damages were minimal and, therefore, prosecuting the claim was not worth the

effort.  Plaintiffs maintain that the claim had merit at the time it was filed and continues to have

merit.

     A claim is objectively specious "where there is a complete lack of evidence supporting [a

plaintiff's] claims." *Computer Econ., Inc. v. Gartner Group, Inc.*, 1999 WL 33178020, at *6 (S.D.

Cal. Dec. 14, 1999).  Under Oregon law, a trade secret is information, in a variety of forms, that "(a)

Derives independent economic value, actual or potential, from not being generally known to the

public or to other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." OR. REV. STAT. 646.461(4) (2007).  If information does not constitute a trade secret, then that information cannot be the basis of a claim of misappropriation of trade secrets.

    i.  TSI's corporate deposition testimony

  Plaintiffs claim there is evidence that Krevanko disclosed the confidential identifies of some of TigerStop's customers and dealers, but the record does not support this claim. They cite TSI's corporate deposition for the proposition that "[TSI] learned the identities of at least [thirteen] TigerStop customers from Krevanko." (Plaintiffs' Response Brief ("Pls.' Resp. Br.") 5.)  In the deposition, TSI's representative was asked to identify "the customers of TigerStop that were disclosed by Mr. Krevanko to TSI, the identity of which TSI did not previously know." (Kolitch Declaration ("Decl."), Exhibit ("Ex.") C at 253:12-15.) TSI identified Clopay, Northland Furniture, Kitchens Amore, Lanz Cabinets, Son-Byrd, and Woodland Furniture as customers disclosed by Krevanko.  TSI also identified Micro Automation, Tri-State Northwest, and Priest Enterprises, as disclosed by Krevanko, though it was unsure whether these were customers or dealers.  TSI also identified Euro-Tech Services, Northwest Wood Products, Advanced Machinery, and Sacramento Machinery as dealers disclosed by Krevanko. (Kolitch Decl., Ex. C at 253:16-255:2.) Based on this deposition, TSI admitted that it learned the identities of thirteen dealers and customers from Krevanko that it did not already have knowledge of.

  Plaintiffs contend that these are unlawful disclosures and are evidence supporting their misappropriation claim, but that these disclosures ultimately resulted in no significant harm. Plaintiffs explain that they learned through discovery that "TSI had already been aware of some other

TigerStop customer identities before Krevanko went to work for TSI, and that TSI had made only a few sales to the TigerStop customers it learned about from Krevanko." (Pls.' Resp. Br. 5.) Therefore, based on information that Plaintiffs had no way of knowing prior to discovery, the trade secret misappropriation claim "would not be worth the legal expense." *Id.*

Krevanko argues that these dealer and customer names were not trade secrets to begin with, and he is correct for two reasons. First, TigerStop posted a list of its dealers on its website in 2004. *See* Johnson Decl., Ex. H. Once a trade secret is posted on the internet, even for a limited amount of time, it loses its secrecy and, thus, its legal protection. *See Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1256 (N.D. Cal. 1995) ("Although a work posted to an Internet newsgroup remains accessible to the public for only a limited amount of time, once that trade secret has been released into the public domain there is no retrieving it. . . . [O]nce posted, the works lost their secrecy.") (internal citations omitted).

Second, even if the online posting did not destroy the secrecy of certain customers or dealers or include all the names and identities Plaintiffs claim Krevanko unlawfully disclosed, it is irrelevant because their identities were not trade secrets to begin with. Krevanko cites the deposition testimony of Scott Brode, Central Regional Sales Manager for TigerStop. Brode testified that he did not consider the names of dealers, customers, or end-users to be confidential. (Johnson Decl., Ex. F at 72:6-13.) Although Plaintiffs claim that this does not reflect TigerStop's actual policy, Brode, a regional sales manager for TigerStop, provided the only evidence of the company's policy. Plaintiffs submitted no written policy, no testimony, and no other evidence to refute Brode's testimony or show that, in fact, TigerStop treated this information as a confidential trade secret.

//

    ii.    Krevanko's email to TSI

Plaintiffs also claim that Krevanko's February 13, 2007, email to TSI's president is evidence that Krevanko revealed confidential information about TigerTurbo, a new product Krevanko learned about during his employ with TigerStop. Again, the record does not support Plaintiffs' claim.

Plaintiffs state that they learned during discovery that the potential for damages arising from this claim was minimal and, therefore, the claim was no longer worth pursuing, but the record shows that this information was not a trade secret, either. First, a former employee testified that after his employment ended he still had unfettered access to TigerStop facilities when he returned for an unscheduled visit. Second, though Plaintiffs point out that a former employee would likely receive different treatment than a stranger or a competitor, Krevanko correctly observes that Plaintiffs have provided no evidence of the steps they took to preserve their trade secrets, except steps taken *after* Krevanko's period of employment, including some implemented immediately before they filed this lawsuit. In short, there is no evidence of any effort, such as protocols to restrict outsiders' access to Plaintiffs' business premises or to safeguard trade secrets through controlling their dissemination, consistent with efforts to protect their confidentiality.

    iii.    TigerStop brochure

Krevanko submits a copy of one of TigerStop's brochures detailing the specifications for one of its new products, the TigerSaw, which Krevanko argues destroyed the secrecy of its product specifications. (Johnson Supplemental Decl., Ex. N.) It is unclear to the court, however, if this is the same product referred to in the email that is Plaintiffs' Exhibit D as the "TurboTiger," or some other TigerStop product. Even so, disclosure of new product specifications in a public brochure strongly refutes the claim that such information was considered confidential.

b.      *Subjective Misconduct*

Krevanko argues that Plaintiffs acted in bad faith by denying that Kravanko did not sign a confidentiality agreement and by producing a "fabricated" and misleading document (Exhibit 2) as an exhibit at deposition. "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit. In proving subjective misconduct, a prevailing defendant may rely on direct evidence of plaintiff's knowledge . . . and [subjective misconduct] may also be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation." *Contract Materials Processing, Inc.*, 222 F. Supp. 2d at 744 (quoting *Computer Econ., Inc.*, 1999 WL 33178020 at *6) (internal quotation marks omitted).

The conduct at issue occurred when Plaintiffs' counsel presented Exhibit 2 to Krevanko during his deposition. Exhibit 2, entitled "Employment Agreement," listed Krevanko and TigerStop LLC as "Parties," as would be true of an authentic agreement; showed January 1, 2005, as the "Date," which date fell within Krevanko's period of employment with plaintiff TigerStop; and reflected a footer that referenced an electronic file labeled "Tiger Stop Current Emp Agreements," implying that the document had been stored as it would have been if created in the normal course of business. After presenting Exhibit 2, Plaintiffs' counsel then posed this question to Krevanko: "Okay. Let's go to what I'll mark as Exhibit 2. This is a multipage unsigned employment agreement that does not bear a Bates number. You'll see that the first page identifies David Krevanko. Have you ever seen this document before?" (Johnson Decl., Ex. C, at 136:4-12.) Krevanko answered that he first saw Exhibit 2 after this case was in litigation. (Johnson Decl., Ex. C, at 136:13.) Krevanko also testified: "I don't recall ever having an employment agreement . . . presented to me." *Id.* at 138:1-4.

Both parties submitted this portion of Krevanko's deposition in support of their briefing on this motion. The deposition excerpts reveal that at no time during the deposition did Plaintiffs' counsel state that Exhibit 2 had been created for purposes of litigation or the deposition itself, or that it was only an example of the agreement that Plaintiffs contended Krevanko signed or agreed to sign. In questioning Krevanko, Plaintiffs' counsel never explained to him why it chose to use an example bearing his name and showing a date falling within his period of employment, instead of a blank form of the agreement. Indeed, although Plaintiffs' counsel did not identify Exhibit 2 as *the* Employment Agreement applicable to Krevanko, Plaintiffs' counsel's opening question to Krevanko about Exhibit 2 creates the clear inference that Exhibit 2 is a contemporaneous document that Krevanko received during his employment, and Krevanko's answers to that and subsequent questions evidence that he was under that impression. Predictably, after the deposition Krevanko sought a forensic evaluation of Exhibit 2 and of Plaintiffs' computers, to determine Exhibit 2's creation date. Ultimately, Plaintiffs admitted that Exhibit 2 was created *after* August 30, 2006, Krevanko's termination date.

The subjective misconduct standard is met here. Although Plaintiffs may not have created Exhibit 2 intending to deliberately fabricate evidence, they knew that Exhibit 2 was not Krevanko's actual employment agreement but disregarded that fact by using the document in a manner that created the impression it was authentic. The effect was to mislead Krevanko at deposition and prompt his attorneys to use additional discovery efforts to pursue Exhibit 2's origins. Plaintiffs' argument that it was Krevanko's responsibility to ask about Exhibit 2's origins is, quite simply, a ludicrous position, especially in the context of their affirmative conduct in creating the document, and then presenting and using it at Krevanko's deposition.

*c.*    *Conclusion*

For all these reasons, Krevanko's motion for attorney fees under ORS 647.467 should be granted.

2.    Attorney Fees under the Federal Rules of Civil Procedure

Attorney fees may be awarded if, in response to a request for admission, a party fails to admit a fact that the propounding party subsequently proves. Under the federal rules, a party can be sanctioned for failure to make appropriate disclosures or otherwise cooperate in discovery. Rule 37(c)(2) applies to requests for admission, and reads:

> ***(2) Failure to Admit.***
>
> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> > (A) the request was held objectionable under Rule 36(a);
> >
> > (B) the admission sought was of no substantial importance;
> >
> > (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> >
> > (D) there was other good reason for the failure to admit.

FED. R. CIV. P. 37(c)(2) (2008). Only exceptions (C) and (D) are relevant to this motion; Plaintiffs never objected to the request at issue and whether Krevanko signed a confidentiality agreement is an important issue in this case because of its relevance to Plaintiffs' trade secret claims.

On February 25, 2008, Plaintiffs responded to Krevanko's first request for admissions which included Request No. 5: "Admit that Krevanko never signed a confidentiality agreement with TigerStop." Plaintiffs responded: "Denied." (Johnson Decl., Ex. A at 2.) Krevanko claims that

Plaintiffs' refusal to admit that he never signed a confidentiality agreement violates this federal rule

and led to extensive and unnecessary discovery and expense. Plaintiffs responded that they "believe

that Krevanko likely signed an Employment Agreement with Tigerstop that included a

confidentiality clause." (Pls.' Resp. Br. 4.)   To support their contention, Plaintiffs cited the

deposition testimony of Spencer Dick, Tigerstop's president, noting that he "testified that Krevanko

agreed to sign such an agreement;" observed that other Tigerstop employees in "similar positions"

to Krevanko signed such agreements "during the same time period," suggesting that Krevanko

"would have been aware" of TigerStop's confidentiality policy and probably was presented with such

an agreement; and cited to the general obligation under Oregon law to "protect an employer's trade

secrets and other confidential information." *Id.*

　　　None of these arguments are availing on the specific point at issue, that Krevanko never

signed a confidentiality agreement. First, Dick testified that Krevanko "agreed to sign a non-

compete agreement" (Kolitch Decl., Ex. A, at 318:21-24), not he actually signed a confidentiality

agreement. As to signing a non-compete agreement, Dick testified that he was "unaware of whether

[Krevanko] did or did not." (*Id.* at 318:25-319-3.)  The distinction is key, because Krevanko's

request for admission focused on the existence of a written confidentiality agreement that he signed

during his employment with Tigerstop, not whether he agreed to sign such a document or that he

agreed to sign a different document, a non-competition agreement.  Plaintiffs produced no signed

confidentiality agreement or testimony from any TigerStop employee that Krevanko ever signed such

an agreement, nor did they refute Krevanko's deposition testimony that TigerStop never presented

to him during his employment an employment agreement to sign. (Kolitch Decl., Ex. G, at 137:11-

138:5.)

FINDINGS AND RECOMMENDATION         11                              {KPR}

Second, no other signed employment agreements exist for the period of Krevanko's employment, August 12, 2002, to August 30, 2006. (Johnson Supp. Decl., Ex. M, at 1-2; Pls.' Complaint ¶ 17.) This refutes Plaintiffs' contention that an employment agreement for Krevanko likely existed because other employees in "similar positions" to Krevanko signed such agreements "during the same time period." (Pl.'s Resp. Br. 4.)

Third, Plaintiffs' reliance on an employee's general legal obligation to maintain confidentiality is irrelevant to whether Krevanko signed an employment agreement with TigerStop that included a confidentiality provision. The request for admission at issue focuses solely on whether Krevanko signed a written agreement. Plaintiffs' contention consistently has been that Krevanko signed such a document or that they believed he did, not that common law obligations bound him to confidentiality. Thus, the reliance on any common law obligation is simply inapposite.

Relief under Rule 37(c)(2) requires the party seeking relief to "prove[] . . . the truth of the matter." Krevanko has met that burden here, as he has demonstrated that he never signed a written confidentiality agreement. In addition, Plaintiffs have failed to demonstrate that their conduct was permissible pursuant to subsections (C) and (D) of Rule 37(c)(2). Accordingly, Krevanko is entitled to attorney fees incurred in connection with having to prove the fact which his request for admission asked Plaintiffs to admit and which they denied.

3.   Common Law Attorney Fees

Krevanko also alleges a common law claim for attorney fees. Because court has found that Krevanko is entitled to attorney fees under both ORS 647.467 and FRCP 37(c)(2), it need not address this additional argument.

//

FINDINGS AND RECOMMENDATION        12                                    {KPR}

### Conclusion and Recommendation

Krevanko has met ORS 647.467's "prevailing party" standard for an award of attorney fees, and he is entitled to reasonable attorney fees incurred to defend Plaintiffs' trade secret claims. In addition, Krevanko has met the burden under FRCP 37(c)(2) for an award of attorney fees, and he is entitled to reasonable fees incurred to prove the fact Plaintiffs denied. Accordingly, Krevanko's motion for attorney fees should be granted.

This ruling is a determination of liability for attorney fees, made separately from the determination of the amount of fees to be awarded, in accordance with Local Rule 54.3(c)(1). Krevanko shall submit documentation to support his claim for attorney fees, which documentation shall precisely comply with all the requirements of Local Rule 54.3(a). The court will not consider a fee request, or any part thereof, that does not comply with the local rule. Plaintiffs then may submit any objections in accordance with Local Rule 54.3(b).

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than February 5, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 22nd day of January, 2009.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION        13                                    {KPR}