IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PRECISION AUTOMATION, INC., a          07-CV-707-AC
Washington corporation, and
TIGERSTOP LLC, an Oregon               ORDER
corporation,

                    Plaintiffs,

v.

TECHNICAL SERVICES, INC., an
Iowa corporation, and DAVID
KREVANKO, an individual,

                    Defendants.

BROWN, Judge.

    On October 23, 2008, Magistrate Judge John V. Acosta issued

Findings and Recommendation (#189) construing disputed claims of

Patent Nos. 7,031,789 ('789 Patent) and 7,171,738 ('738 Patent).

Defendant filed timely Objections (#194) to the Findings and

Recommendation.  Defendant objects to the Magistrate Judge's

recommended construction of the phrases "drill list data

corresponding to positions on workpieces where holes should be

1 - ORDER

drilled," "workpiece," and "optical measuring device." The matter is now before this Court pursuant to Federal Rule of Civil Procedure 72(a).

When a party objects to any portion of a Magistrate Judge's nondispositive Order, the district court must make a *de novo* determination of that portion of the Order.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

## I.    "Drill list data corresponding to positions on workpieces where holes should be drilled."

The Magistrate Judge recommends the Court construe the phrase "drill list data corresponding to positions on workpieces where holes should be drilled" as "data relating to the formation of holes in desired positions on a workpiece."  Defendant objects to this construction on the grounds that it fails to capture the requirement that the data correspond to positions on workpieces based on the language of the specification and the prosecution history of the patent.

The Magistrate Judge considered both the specification and the prosecution history of the patent when he made his recommendation.  Specifically, the Magistrate Judge noted after reviewing the specification that it "supports the broader interpretation of 'drill list data corresponding to positions on workpieces where holes should be drilled' that does not require

2 - ORDER

the data to identify specific positions." The Magistrate Judge also noted the prosecution history of the patent did not narrow the scope of the phrase "drill list data corresponding to positions on workpieces where holes should be drilled" because the patentees did not narrow the meaning of the phrase during the prosecution by a "clear and unmistakable disavowal of scope."

In rejecting Defendant's proposed construction of the phrase "drill list data corresponding to positions on workpieces where holes should be drilled," the Magistrate Judge reasoned:

> [T]he prosecution history should not restrict the scope of the term "drill list data corresponding to positions on workpieces where holes should be drilled." Thus, the term "drill list data corresponding to positions on workpieces where holes should be drilled" should be given its plain and ordinary meaning as supported by the specification. The specification supports a broader interpretation of the term that does not limit it to identifying specific positions. However, the data still must "correspond to positions," so it cannot merely be "data corresponding to the formation of a hole," which conceivably could include no positional data whatsoever. While the specification clearly states that "drill list data" alone can include data other than positions, such as the depth or angle of the hole, the claims only recite "drill list data corresponding to locations on workpieces where holes should be drilled." Thus, the data must contain some information with which the system can ascertain the location where the hole(s) should be drilled. The definition that Precision proposes in its supplemental brief, that "drill list data corresponding to positions on workpieces where holes should be drilled" should be construed as "data relating to the formation of holes in desired positions on a workpiece,"

>           captures the idea that the data must relate in
>           some fashion to a position on the workpiece.

Findings and Recommendation at 17-18.

The Court has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation as to the construction of the phrase "drill list data corresponding to positions on workpieces where holes should be drilled."

**II.  Workpiece.**

Defendant objects to the Magistrate Judge's recommendation that the Court construe the term "workpiece" to include the fully processed form based on the specification language that states "[t]he fully processed form of a workpiece, as used herein, is termed a workpiece product or product" and differentiates a workpiece from a fully processed product.  According to Defendant, "workpiece" should not be construed to include the fully processed form.

The Magistrate Judge noted the relevant portion of the specification includes the following description:

>           [A] workpiece may be in a raw or "unprocessed"
>           form (before any processing by a system), in a
>           partially processed form (during and/or after
>           partial processing by the system), or in a fully
>           processed form (after processing of the workpiece
>           by the system has been completed and/or the
>           workpiece has passed through the system). . . .
>           The fully processed form of a workpiece, as used
>           herein, is termed a workpiece product or product.

Findings and Recommendation at 22.  The Magistrate Judge also

4 - ORDER

considered Defendant's argument and noted the following language
in the specification:  "'[F]ully processed form of a workpiece'
demonstrates that the fully processed form is meant to be a
subset of the category of workpieces.  This interpretation avoids
having a contradiction with the earlier line in the same
paragraph."  The Magistrate Judge, therefore, concluded "a fully
processed form should not be excluded from the definition of
workpiece."

The Court has reviewed the pertinent portions of the record
*de novo* and does not find any error in the Magistrate Judge's
Findings and Recommendation as to the construction of the term
"workpiece."

**III. Optical Measuring Device.**

Defendants object to the Magistrate Judge's recommendation
as to the construction of the phrase "optical measuring device"
on the ground that Defendant's proposed construction of "a device
that measures the length of an optical path" is the only
construction supported by the specification.

The Magistrate Judge recommended the Court construe the
phrase "optical measuring device" as "a device that can measure
at least one property of electromagnetic radiation in the
wavelength range including only infrared, visible, ultraviolet,
and X rays."  The Magistrate Judge noted Defendant's proposed
definition "improperly renders subsequent claim language

5 - ORDER

superfluous."  Thus, to give meaning to all of the words of the claim, the Magistrate Judge found the phrase "optical measuring device" should not be construed as restricted to a device that inputs data regarding the location of defects.  The Magistrate Judge also found Defendant's proposed interpretation would improperly read embodiments appearing in the specification into the claim because the claim language is broader than those embodiments.

The Court has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation as to the construction of the phrase "optical measuring device."

### CONCLUSION

The Court **ADOPTS** Magistrate Judge Acosta's Findings and Recommendation (#189) and construes the disputed claims of the '789 Patent and the '738 Patent as recommended.

IT IS SO ORDERED.

DATED this 2nd day of February, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


6 – ORDER