UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PRECISION AUTOMATION, INC., a
Washington Corporation, and TIGERSTOP
LLC, an Oregon Corporation,

        Plaintiffs,

   v.

TECHNICAL SERVICES, INC., an Iowa
Corporation,

        Defendant.

Civ. No. 07-707-AC

OPINION AND
ORDER

TECHNICAL SERVICES, INC., an Iowa
corporation, and DAVID KREVANKO,

        Counterclaim Plaintiffs,

   v.

PRECISION AUTOMATION, INC., a
Washington corporation, and TIGERSTOP
LLC, an Oregon corporation,

        Counterclaim Defendants.

ACOSTA, Magistrate Judge:

OPINION AND ORDER        1        {KPR}

*Introduction*

Currently before the court is Plaintiffs Precision Automation, Inc. and TigerStop LLC's ("Plaintiffs") motion to strike or sever Defendant Technical Services, Inc.'s ("Defendant") cybersquatting counterclaim, brought under 15 U.S.C. § 1125(d). Plaintiffs request that the court strike or sever this counterclaim because it is unrelated to the other claims comprising this action and its untimely assertion is highly prejudicial to Plaintiffs. For the reasons stated below, Plaintiffs' motion is denied.

*Factual Background*

This action was initially filed in federal court on May 14, 2007. On April 7, 2008, Plaintiffs produced evidence to Defendant of the domain name registrations that are the subject of Defendant's cybersquatting counterclaim. On August 26, 2008, Defendant deposed Spencer Dick ("Dick"), president of TigerStop LLC. The deposition covered issues related to cybersquatting.

On September 22, 2008, fact discovery closed. Plaintiffs filed a Third Amended Complaint on October 20, 2008, to reflect the voluntary dismissal of certain of Plaintiffs' claims and remove allegations of willful copyright infringement pursuant to this court's Findings and Recommendation, issued on August 14, 2008, and formally adopted by District Judge Brown on September 29, 2008. On November 6, 2008, Defendant filed its answer to Plaintiffs' Third Amended Complaint and, in that answer, asserted an additional counterclaim for cybersquatting.

*Discussion*

1.  Motion to Strike

Federal Rule of Civil Procedure ("Rule") 12(f) states, in relevant part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." FED. R. CIV. P. 12(f)(1) (2008). The rule provides that a court may strike an element of a pleading upon a party's motion or at the court's own discretion. "Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic." *RDF Media Ltd. v. Fox Broadcasting Company*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005) (citing William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:375 (2008)). "The essential function of a Rule 12(f) motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

Before striking a claim, the court must determine that all questions of law or fact have been resolved and "under no set of circumstances could the claim . . . succeed." *RDF Media Ltd.*, 372 F. Supp. 2d at 561 (citing *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)). The court must also view the claim in the light most favorable to the non-moving party. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000).

Plaintiffs argue that the court should strike Defendant's counterclaim because it is unrelated to the remainder of the action and allowing the counterclaim to proceed would be highly prejudicial to Plaintiffs. Defendant responds that Rule 12(f) does not authorize striking the counterclaim, Rule 18 authorizes a party to bring any and all claims, and Plaintiffs themselves are responsible for any delay that has occurred.

    *a.*    *Relatedness*

Plaintiffs cite *Trevino v. Lassen Mun. Utility Dist.*, Civ. S-07-2106, 2008 WL 1349063, at *2 (E.D. Cal. Apr. 9, 2008) for the proposition that a claim may be stricken where "the allegations

in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." The *Trevino* court further stated that motions to strike are disfavored and, where there is any doubt as to their propriety, they should be denied. *Id.* (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (2d ed. 1990)). Plaintiffs claim that cybersquatting claims, which generally involve unlawful registration and use of internet domain names, are entirely unrelated to patent and copyright infringement claims. Domain names, Plaintiffs write, "have no conceivable relationship to the patents, the accused products, or the copyrighted images." (Plaintiffs' Brief ("Pls.' Br.") 5.)

Defendant objects to the relatedness standard set forth by Plaintffs and in *Trevino* as erroneous. The court need not resolve whether this inquiry is determinative for purposes of a motion to strike, because the court disagrees with Plaintiffs that the cybersquatting claim is so unrelated as to have no conceivable relationship to the claims already plead. Cyberpiracy, patent, and copyright law are all branches of intellectual property law, in general. This is but one conceivable relationship between the claims. The cybersquatting claim relates to the other claims in that they share the same parties and the same subject matter (Defendant's allegedly infringing machines). To the extent that Defendant is able to prove these registrations were made in bad faith (an element of a cybersquatting claim), there would be little doubt that the allegedly unlawful registrations were made as a result of the animosity between the parties arising from the alleged patent and copyright infringement and subsequent lawsuit. Furthermore, the court record demonstrates a series of disputes between the two business entities stemming from their competitive positions in their industry, of which the cybersquatting dispute is one. Thus, the court does not agree that the cybersquatting claim has "no possible relation" to the other claims at issue.

*b.    Prejudice*

Plaintiffs argue that allowing the cybersquatting claim to go forward would be highly prejudicial. According to Plaintiffs, the highly fact-intensive nature of the "bad faith intent to profit" inquiry would require additional discovery. Thus, by delaying bringing this claim, "[Defendant] has prevented plaintiffs from investigating the validity of [Defendant]'s trademark rights and any factors tending to make its trademark not distinctive and famous." (Pls.' Br. 5.) Therefore, Plaintiffs claim, under the current discovery schedule, allowing the claim to go forward would be highly prejudicial.

Defendant responds that allowing the cybersquatting claim to go forward would not be prejudicial to Plaintiffs. First, Defendant promised Plaintiffs it would not object to additional discovery on timeliness grounds and agrees to provide Plaintiffs with any additional requested discovery related to this counterclaim. Second, Defendant points out that Plaintiffs did not request additional discovery in the event this motion is denied. This proves, according to Defendant, that Plaintiffs do not actually need additional discovery.

Even if the delay is prejudicial, Defendant argues that delay is attributable to Plaintiffs' own conduct in the following ways. Although some evidence of cybersquatting was available on April 7, 2008, it was not until the deposition of Dick that Defendant had sufficient evidence of bad faith. The Dick deposition was originally scheduled for March 2008, but did not actually take place until August 2008, as a result of Plaintiffs' alleged general failure to comply with discovery. Further, Defendant opted to delay filing this counterclaim until responding to Plaintiffs' Third Amended Complaint, which itself was filed on October 20, 2008, to avoid burdening the court with an additional motion for leave to amend. Defendant's subsequent filing on November 6, 2008, was thus timely.

Plaintiffs counter that Defendant should have filed this counterclaim prior to the close of discovery and was not justified in waiting until the Third Amended Complaint was filed to present its new claim. Plaintiffs contend that Defendant did not move for leave to amend its answer, for fear such leave would not be granted.

As to prejudice, the court is not persuaded that the prejudice to Plaintiffs is so great as to justify striking an otherwise valid claim. First, because the claims are substantially interrelated, it serves judicial efficiency to resolve them concurrently with the other claims in this case. Second, although Plaintiffs might not always have been as timely in their discovery responses as prudent, both parties' discovery strategy and implementation have produced substantial delays, one of which was a delay in the deposition of Dick. The court concludes that Defendant lacked evidence of a bad faith intent until this deposition took place.

As for Plaintiffs' argument that it was not appropriate for Defendant to hold back its cybersquatting claim until it filed its answer to Plaintiffs' Third Amended Complaint, approximately nine weeks after deposing Dick and six weeks after the close of discovery, the court finds that any prejudice can be adequately remedied by allowing Plaintiffs additional discovery. Defendant agrees not to oppose additional discovery requests based on timeliness. Accordingly, Plaintiffs' motion to strike the cybersquatting counterclaim is denied.

2.  Motion to Sever

Rule 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21 (2008). A court may exercise its discretion to sever claims "for purposes of convenience, to avoid prejudice, or to promote the expeditious resolution

of the litigation." *Ferger v. C.H. Robinson Worldwide, Inc.*, No. C06-174RSL, 2006 WL 2091015, at *1 (W.D. Wash. July 25, 2006). A court may not exercise its discretion to sever "if the severance separates an otherwise 'essentially unitary problem.'" *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 285 B.R. 460, 470 (D. Or. Jan. 28, 2002) (citing *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); quoting *Spencer, White and Prentis, Inc. of Connecticut v. Pfizer Inc.*, 498 F.2d 358, 362 (2d Cir. 1974)). To determine whether the claims are part of an essentially unitary problem, the court may consider standards for permissive joinder of claims. *See McDowell*, 285 B.R. at 471 (where the court lacked discretion to sever because claims were "part of a unitary problem," but would have declined to sever anyway because the claims were "closely connected and involve[d] overlapping issues of fact and law that should be resolved together.").

Plaintiffs argue that the cybersquatting claim and the patent and copyright claims are not part of a unitary problem. According to Plaintiffs, the claims are factually and legally unrelated, and thus may be severed. Plaintiffs also argue that severance should occur because Plaintiffs will suffer prejudice, the jury may be confused by numerous legal issues, expediting and simplifying this litigation is desirable, and Defendant would suffer no prejudice because it could raise the claim separately in a different cause of action.

Again, the court concludes that the cybersquatting claim and the other claims present an essentially unitary problem and that jury confusion is not likely. To the extent of any prejudice, the agreement between the parties to facilitate additional discovery on this issue is sufficiently mitigating. Accordingly, Plaintiffs' motion to sever is denied.

## *Conclusion*

For the reasons stated, Plaintiffs' Motion to Strike or Sever TSI's Cyberpiracy Counterclaim

(#201) is DENIED.

DATED this 9th day of February, 2009.

                                                  JOHN V. ACOSTA
                                            United States Magistrate Judge