IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PRECISION AUTOMATION, INC,                    07-CV-707-AS
a Washington Corporation,
and TIGERSTOP, LLC, an Oregon                 OPINION AND ORDER
Corporation,

       Plaintiffs,

v.

TECHNICAL SERVICES, INC., an
Iowa Corporation, and DAVID
KREVANKO, an individual,

       Defendants.


PETER E. HEUSER
PIERRE C. VAN RYSSELBERGHE
ELIZABETH A. TEDESCO
SHAWN J. KOLITCH
Kolisch Hartwell, P.C.
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR 97204
(503) 224-6655

      Attorneys for Plaintiffs

1 - OPINION AND ORDER

**KAREN L. O'CONNOR**
Barran Liebman, LLP
601 S.W. Second Avenue
Suite 2300
Portland, OR 97204
(503) 228-0500

**JANET E. PHIPPS BURKHEAD**
**KURT VAN THOMME**
**R. SCOTT JOHNSON**
McKee, Voorhees & Sease, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, IA 50309
(515) 288-3667

> Attorneys for Defendants Technical Services, Inc.,
> and David Krevanko

**BROWN, Judge.**

Magistrate Judge John Acosta issued Findings and
Recommendation (#214) on January 22, 2009, in which he recommends
the Court grant Defendant David Krevanko's Motion for Attorneys'
Fees and Expenses (#171).  Plaintiffs filed timely Objections to
the Findings and Recommendation.  The matter is now before this
Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil
Procedure 72(b).

When any party objects to any portion of the Magistrate
Judge's Findings and Recommendation, the district court must make
a *de novo* determination of that portion of the Magistrate Judge's
report.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-*
*Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United*
*States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

2 - OPINION AND ORDER

I.    **Attorneys' Fees under Oregon Revised Statute § 646.467.**

The Magistrate Judge concluded Defendant David Krevanko was entitled to attorneys' fees under the Oregon Uniform Trade Secrets Act, Oregon Revised Statute § 646.467, because Krevanko established Plaintiffs' trade-secret claim against him was objectively specious and Plaintiffs engaged in subjective misconduct.

Although Plaintiffs agree the Magistrate Judge applied the correct legal standard, they contend he erred in his application of that standard to the facts of this case.

A.    **Objectively specious claim.**

Plaintiffs contend the Magistrate Judge erred when he found Plaintiffs' trade-secrets claim against Krevanko was objectively specious on the grounds that the record does not contain any evidence that Krevanko or any other TigerStop employee signed a confidentiality agreement during the period August 12, 2002, through August 30, 2006, when Plaintiff was employed by TigerStop. Plaintiffs also contend the Magistrate Judge erred when he found the record did not contain any evidence to support Plaintiffs' assertion that Krevanko disclosed confidential information such as the identities of some of TigerStop's customers, dealers, and product specifications.

1.    **Employee-confidentiality agreements.**

In their Objections, Plaintiffs note the record

3 - OPINION AND ORDER

before the Magistrate Judge contained a confidentiality agreement between Precision and Scott Brode executed on August 15, 2001. Even though this confidentiality agreement was signed before Krevanko began his employment with TigerStop, Plaintiffs contend the existence of this agreement supported Plaintiffs' reasonable belief at the time this action was filed and throughout most of discovery that Krevanko likely would have signed a similar confidentiality agreement.  Similarly, Plaintiffs also submitted with their Objections confidentiality agreements that two other Precision employees signed before Krevanko began his employment. According to Plaintiffs, therefore, the Magistrate Judge erred when he found Plaintiffs' trade-secrets claim against Krevanko was objectively specious.

As pointed out by Krevanko in his Response to Plaintiffs' Objections, the Court notes all three of the confidentiality agreements submitted by Plaintiffs were signed by employees of Precision before Plaintiff began his employment with TigerStop.  In addition, Precision created TigerStop in 2002 as a separate Oregon limited-liability company and moved its sales and marketing functions to TigerStop "to manage tax burdens."  As Krevanko notes, the separation of TigerStop into its own company required TigerStop to establish its own policies and procedures regarding confidentiality.  Nonetheless, the record is devoid of any evidence that TigerStop required Krevanko or any other

TigerStop employee to sign a confidentiality agreement between August 12, 2002, and August 30, 2006, when TigerStop was a separate company and Krevanko was employed by TigerStop. Moreover, the record reflects TigerStop did not require Brode, who moved from Precision to TigerStop, to sign a confidentiality agreement until 2007, which was after Krevanko's period of employment with TigerStop and shortly before Plaintiffs filed this action.  In addition, the two other employees who signed confidentiality agreements with Precision became employees of Tucker & Verlenden, a third company spun off from Precision, and those two employees signed confidentiality agreements after they went to work for Tucker & Verlenden.

On this record, the Court concludes employee-confidentiality agreements signed by Precision employees before Precision broke into three separate corporations, signed by TigerStop employees after Krevanko's tenure with TigerStop, and signed by employees of Tucker & Verlenden do not prove TigerStop required any of *its* employees to sign confidentiality agreements during Krevanko's tenure.  In the absence of any such evidence, Plaintiffs' belief that TigerStop had required Krevanko to sign an employee-confidentiality agreement was speculative at best. Accordingly, the Court concludes the Magistrate Judge did not err when he found the record did not establish that TigerStop required Krevanko or any other employee, for that matter, to sign

5 - OPINION AND ORDER

confidentiality agreements between August 12, 2002, and August 30, 2006.

     **2.   Dealer and customer identities.**

Plaintiffs also contend the Magistrate Judge erred when he found TigerStop's dealer and customer lists did not constitute confidential information subject to trade-secret protection because the record does not reflect Plaintiffs took any steps to designate this information as secret during Krevanko's tenure with TigerStop.

Plaintiffs, relying heavily on the confidentiality agreement signed by Brode, insist TigerStop took steps to ensure the confidentiality of customer lists. As noted, however, Brode signed his confidentiality agreement during his employment with Precision and did not sign a confidentiality agreement with TigerStop until Krevanko was no longer a TigerStop employee.

In any event, Brode's confidentiality agreement with Precision does not establish any confidentiality requirements implemented by TigerStop. Moreover, Brode testified at deposition that he did not consider the names of dealers or customers to be confidential during Krevanko's employment with TigerStop. As Krevanko states in his Response to Plaintiffs' Objections, the record reflects Brenda Hehn, an employee of Tucker & Verlenden, testified at deposition that she was given access to TigerStop's financial information, customer list, and

facilities without any confidentiality warning or agreement with
TigerStop.  In fact, there is not any evidence in the record that
TigerStop had any policy as to what kinds of information were
considered confidential or that it required sign-in sheets or
otherwise limited access to any part of its facilities.

        Finally, the record reflects TigerStop posted a
list of dealers on its website in 2004.  When a trade secret is
posted on the Internet for even a limited amount of time, it
loses its secrecy and its legal protection.  *Religious Tech. Ctr.*
*v. Netcom On-Line Communic'n Svcs., Inc.*, 923 F. Supp. 1231, 1256
(N.D. Cal. 1995)("Although work posted to an Internet newsgroup
remains accessible to the public for only a limited amount of
time, once that trade secret has been released into the public
domain, there is no retrieving it. . . .  [O]nce posted, the
works lost their secrecy.") (internal citations omitted)).

        On this record, the Court concludes the Magistrate
Judge did not err when he found TigerStop's customer and dealer
lists were not trade secrets, and, therefore, those lists could
not serve as a basis for Plaintiffs' claim against Krevanko.

### 3.   Plaintiffs' product specifications.

        Plaintiffs also contend the Magistrate Judge erred
when he found the product specifications for one of TigerStop's
products did not constitute trade secrets, and, therefore, those
product specifications could not serve as the basis for a trade-

secrets claim against Krevanko.

As Krevanko notes in his Response to Plaintiffs'
Objections, TigerStop sent its dealers a publication that
discussed the TigerTurbo's specifications before its March 2007
release even though TigerStop's dealers were not subject to any
confidentiality agreement.  In addition, TigerStop sent out
pricing sheets for the TigerTurbo effective January 2007 before
its release in March 2007.  The Court, therefore, concludes the
Magistrate Judge did not err when he found the record did not
support Plaintiffs' assertion that the product specifications for
TigerTurbo were kept confidential as trade secrets.

In summary, the Court concludes the Magistrate Judge
did not err when he found Plaintiffs' trade-secrets claim against
Krevanko was objectively specious.

**B.    Subjective misconduct.**

Plaintiffs contend the Magistrate Judge erred when he
found Plaintiffs engaged in subjective misconduct by bringing a
trade-secrets claim against Krevanko.  Specifically, the
Magistrate Judge found Plaintiffs engaged in subjective
misconduct when (1) they denied Krevanko's request that
Plaintiffs admit Krevanko did not sign a confidentiality
agreement with TigerStop and (2) they produced a "fabricated" and
misleading example of a confidentiality agreement as an exhibit
at Krevanko's deposition.

During Krevanko's deposition on July 15, 2008,
Plaintiffs' counsel presented an exhibit to Krevanko titled
"Employee Agreement", which was dated January 1, 2005, and which
listed Krevanko and TigerStop as "Parties."  The exhibit
contained a footer that referenced an electronic file labeled
"Tiger Stop Current Emp Agreements" suggesting the document had
been stored electronically as it would have been if it had been
created in the normal course of business.  Plaintiffs' counsel
presented the exhibit and asked Krevanko the following question:

> Okay.  Let's go to what I'll mark as Exhibit 2.
> This is a multipage unsigned employment agreement
> that does not bear a Bates number.  You'll see
> that the first page identifies David Krevanko.
> Have you ever seen this document before?

Krevanko responded he had not seen Exhibit 2 until after this
case was in litigation and testified "I don't recall ever having
signed an employment agreement . . . presented to me."

As the Magistrate Judge noted, Plaintiffs' counsel did
not state at any time during Krevanko's deposition that Exhibit 2
was a document created for the purpose of litigation nor did
counsel clarify that it was merely an example of the kind of
employment agreement Krevanko might have signed under Plaintiffs'
assumed theory of the case.  Indeed, it was only after Krevanko
sought to perform a forensic inspection of Plaintiff's computer
system in an effort to determine when Exhibit 2 was created that
Plaintiffs acknowledged on September 22, 2008, that Exhibit 2 was

created on August 30, 2006, which is the date they terminated
Krevanko's employment with TigerStop.

Even if Plaintiffs did not create Exhibit 2 with the
intent to fabricate evidence, the Magistrate Judge concluded
Plaintiffs were aware before deposition that Exhibit 2 was not an
employment agreement executed by Krevanko.  Nevertheless, the
Court agrees with the Magistrate Judge that Plaintiffs created
that impression at deposition through the suggestive manner in
which Exhibit 2 was used.  Although Plaintiffs insist they merely
used Exhibit 2 as a demonstrative exhibit, the Court notes
Plaintiffs' counsel could have used a blank form for
demonstrative purposes.  Instead Plaintiffs' counsel phrased the
question to Krevanko as "You'll see that the first page
identifies David Krevanko," which, without clarification,
reasonably suggests and actually gave Krevanko the impression
that Exhibit 2 was an authentic employment agreement presented to
him and/or executed by him on January 1, 2005.

Nevertheless, Plaintiffs maintain they did not engage
in subjective misconduct because they did not actually know that
Krevanko had never signed an employment agreement with TigerStop
until after they conducted discovery.  Plaintiffs cite a number
of cases to support their proposition that "the merits of a trade
secret case are generally developed through discovery."  These
cases, however, do not in any way support Plaintiffs' misleading

use of Exhibit 2 during the deposition or their refusal to
acknowledge that Krevanko did not sign an employment agreement
after Krevanko requested such an admission.

On this record, therefore, the Court concludes the
Magistrate Judge did not err when he found Plaintiffs engaged in
subjective misconduct.

In summary, the Court concludes the Magistrate Judge did not
err when he found Plaintiffs's trade-secret claim against
Krevanko was objectively specious and that Plaintiffs engaged in
subjective misconduct.  Accordingly, the Court adopts the
Magistrate Judge's recommendation to allow Krevanko to seek
attorneys' fees under Oregon Revised Statute § 647.467.

**II.  Attorneys' fees under the Federal Rules of Civil Procedure.**

The Magistrate Judge concluded Krevanko is entitled to
attorneys' fees "incurred in connection with having to prove the
fact which his request for admission asked Plaintiffs to admit
and which they denied."  Specifically, Federal Rule of Civil
Procedure 37(c)(2)(C) and (D) provide:

> **Failure to Admit.**  If a party fails to admit what
> is requested under Rule 36 and if the requesting
> party later proves a document to be genuine or the
> matter true, the requesting party may move that
> the party who failed to admit pay the reasonable
> expenses, including attorney's fees, incurred in
> making that proof. The court must so order unless:
>
> * * *
>
> (C) the party failing to admit had a reasonable
> ground to believe that it might prevail on the

11 - OPINION AND ORDER

matter; or

(D) there was other good reason for the failure to admit.

Krevanko propounded requests for admissions to Plaintiffs in which he asked Plaintiffs to admit that he "never signed a confidentiality agreement with TigerStop." Plaintiffs denied that request for admission. Plaintiffs argue they had a "good reason" for failing to admit that Krevanko did not sign a confidentiality agreement based on the testimony of Spencer Dick, TigerStop's president, and on the fact that confidentiality agreements were signed by other Precision employees before Krevanko began his employment with TigerStop, by other TigerStop employees after Krevanko's tenure at TigerStop, and by employees of Tucker & Verlenden.

As the Magistrate Judge pointed out, however, even though Dick testified Krevanko "agreed to sign a non-compete agreement," Dick testified he was "unaware of whether [Krevanko] did or did not [sign a confidentiality agreement]." Moreover, the employees who signed confidentiality agreements either worked for companies other than TigerStop or, as with Brode, did not sign confidentiality agreements with TigerStop during the time Krevanko was employed there.

On this record, the Court concludes Krevanko has established Plaintiffs' conduct was not permissible under Rule 37(c)(2)(C) and (D). Accordingly, the Court adopts the Magistrate Judge's

12 - OPINION AND ORDER

finding that Krevanko also is entitled to attorneys' fees incurred in establishing that Plaintiffs improperly denied his request for admission.

In summary, this Court has carefully considered Plaintiffs' Objections and concludes their Objections do not provide a basis to modify the Findings and Recommendation.  The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation.

## CONCLUSION

The Court **ADOPTS** Magistrate Judge Acosta's Findings and Recommendation (#214) and, accordingly, **GRANTS** Defendant Krevanko's Motion for Attorneys' Fees and Expenses (#171) in an amount to be determined in further proceedings before the Magistrate Judge.

IT IS SO ORDERED.

DATED this 24th day of April, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


13 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PRECISION AUTOMATION, INC,                    07-CV-707-AS
a Washington Corporation,
and TIGERSTOP, LLC, an Oregon                 OPINION AND ORDER
Corporation,

        Plaintiffs,

v.

TECHNICAL SERVICES, INC., an
Iowa Corporation, and DAVID
KREVANKO, an individual,

        Defendants.


PETER E. HEUSER
PIERRE C. VAN RYSSELBERGHE
ELIZABETH A. TEDESCO
SHAWN J. KOLITCH
Kolisch Hartwell, P.C.
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR 97204
(503) 224-6655

        Attorneys for Plaintiffs

1 - OPINION AND ORDER

**KAREN L. O'CONNOR**
Barran Liebman, LLP
601 S.W. Second Avenue
Suite 2300
Portland, OR 97204
(503) 228-0500

**JANET E. PHIPPS BURKHEAD**
**KURT VAN THOMME**
**R. SCOTT JOHNSON**
McKee, Voorhees & Sease, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, IA 50309
(515) 288-3667

    Attorneys for Defendants Technical Services, Inc.,
    and David Krevanko

**BROWN, Judge.**

   Magistrate Judge John Acosta issued Findings and Recommendation (#214) on January 22, 2009, in which he recommends the Court grant Defendant David Krevanko's Motion for Attorneys' Fees and Expenses (#171). Plaintiffs filed timely Objections to the Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

   When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

2 - OPINION AND ORDER

I.   **Attorneys' Fees under Oregon Revised Statute § 646.467.**

The Magistrate Judge concluded Defendant David Krevanko was entitled to attorneys' fees under the Oregon Uniform Trade Secrets Act, Oregon Revised Statute § 646.467, because Krevanko established Plaintiffs' trade-secret claim against him was objectively specious and Plaintiffs engaged in subjective misconduct.

Although Plaintiffs agree the Magistrate Judge applied the correct legal standard, they contend he erred in his application of that standard to the facts of this case.

A.   **Objectively specious claim.**

Plaintiffs contend the Magistrate Judge erred when he found Plaintiffs' trade-secrets claim against Krevanko was objectively specious on the grounds that the record does not contain any evidence that Krevanko or any other TigerStop employee signed a confidentiality agreement during the period August 12, 2002, through August 30, 2006, when Plaintiff was employed by TigerStop.  Plaintiffs also contend the Magistrate Judge erred when he found the record did not contain any evidence to support Plaintiffs' assertion that Krevanko disclosed confidential information such as the identities of some of TigerStop's customers, dealers, and product specifications.

1.   **Employee-confidentiality agreements.**

In their Objections, Plaintiffs note the record

3 - OPINION AND ORDER

before the Magistrate Judge contained a confidentiality agreement between Precision and Scott Brode executed on August 15, 2001. Even though this confidentiality agreement was signed before Krevanko began his employment with TigerStop, Plaintiffs contend the existence of this agreement supported Plaintiffs' reasonable belief at the time this action was filed and throughout most of discovery that Krevanko likely would have signed a similar confidentiality agreement. Similarly, Plaintiffs also submitted with their Objections confidentiality agreements that two other Precision employees signed before Krevanko began his employment. According to Plaintiffs, therefore, the Magistrate Judge erred when he found Plaintiffs' trade-secrets claim against Krevanko was objectively specious.

As pointed out by Krevanko in his Response to Plaintiffs' Objections, the Court notes all three of the confidentiality agreements submitted by Plaintiffs were signed by employees of Precision before Plaintiff began his employment with TigerStop. In addition, Precision created TigerStop in 2002 as a separate Oregon limited-liability company and moved its sales and marketing functions to TigerStop "to manage tax burdens." As Krevanko notes, the separation of TigerStop into its own company required TigerStop to establish its own policies and procedures regarding confidentiality. Nonetheless, the record is devoid of any evidence that TigerStop required Krevanko or any other

TigerStop employee to sign a confidentiality agreement between
August 12, 2002, and August 30, 2006, when TigerStop was a
separate company and Krevanko was employed by TigerStop.
Moreover, the record reflects TigerStop did not require Brode,
who moved from Precision to TigerStop, to sign a confidentiality
agreement until 2007, which was after Krevanko's period of
employment with TigerStop and shortly before Plaintiffs filed
this action.  In addition, the two other employees who signed
confidentiality agreements with Precision became employees of
Tucker & Verlenden, a third company spun off from Precision, and
those two employees signed confidentiality agreements after they
went to work for Tucker & Verlenden.

         On this record, the Court concludes employee-
confidentiality agreements signed by Precision employees before
Precision broke into three separate corporations, signed by
TigerStop employees after Krevanko's tenure with TigerStop, and
signed by employees of Tucker & Verlenden do not prove TigerStop
required any of *its* employees to sign confidentiality agreements
during Krevanko's tenure.  In the absence of any such evidence,
Plaintiffs' belief that TigerStop had required Krevanko to sign
an employee-confidentiality agreement was speculative at best.
Accordingly, the Court concludes the Magistrate Judge did not err
when he found the record did not establish that TigerStop
required Krevanko or any other employee, for that matter, to sign

5 - OPINION AND ORDER

confidentiality agreements between August 12, 2002, and August 30, 2006.

### 2. Dealer and customer identities.

Plaintiffs also contend the Magistrate Judge erred when he found TigerStop's dealer and customer lists did not constitute confidential information subject to trade-secret protection because the record does not reflect Plaintiffs took any steps to designate this information as secret during Krevanko's tenure with TigerStop.

Plaintiffs, relying heavily on the confidentiality agreement signed by Brode, insist TigerStop took steps to ensure the confidentiality of customer lists. As noted, however, Brode signed his confidentiality agreement during his employment with Precision and did not sign a confidentiality agreement with TigerStop until Krevanko was no longer a TigerStop employee.

In any event, Brode's confidentiality agreement with Precision does not establish any confidentiality requirements implemented by TigerStop. Moreover, Brode testified at deposition that he did not consider the names of dealers or customers to be confidential during Krevanko's employment with TigerStop. As Krevanko states in his Response to Plaintiffs' Objections, the record reflects Brenda Hehn, an employee of Tucker & Verlenden, testified at deposition that she was given access to TigerStop's financial information, customer list, and

facilities without any confidentiality warning or agreement with TigerStop.  In fact, there is not any evidence in the record that TigerStop had any policy as to what kinds of information were considered confidential or that it required sign-in sheets or otherwise limited access to any part of its facilities.

Finally, the record reflects TigerStop posted a list of dealers on its website in 2004.  When a trade secret is posted on the Internet for even a limited amount of time, it loses its secrecy and its legal protection.  *Religious Tech. Ctr. v. Netcom On-Line Communic'n Svcs., Inc.*, 923 F. Supp. 1231, 1256 (N.D. Cal. 1995)("Although work posted to an Internet newsgroup remains accessible to the public for only a limited amount of time, once that trade secret has been released into the public domain, there is no retrieving it. . . .  [O]nce posted, the works lost their secrecy.") (internal citations omitted)).

On this record, the Court concludes the Magistrate Judge did not err when he found TigerStop's customer and dealer lists were not trade secrets, and, therefore, those lists could not serve as a basis for Plaintiffs' claim against Krevanko.

### 3.  Plaintiffs' product specifications.

Plaintiffs also contend the Magistrate Judge erred when he found the product specifications for one of TigerStop's products did not constitute trade secrets, and, therefore, those product specifications could not serve as the basis for a trade-

7 - OPINION AND ORDER

secrets claim against Krevanko.

As Krevanko notes in his Response to Plaintiffs'
Objections, TigerStop sent its dealers a publication that
discussed the TigerTurbo's specifications before its March 2007
release even though TigerStop's dealers were not subject to any
confidentiality agreement.  In addition, TigerStop sent out
pricing sheets for the TigerTurbo effective January 2007 before
its release in March 2007.  The Court, therefore, concludes the
Magistrate Judge did not err when he found the record did not
support Plaintiffs' assertion that the product specifications for
TigerTurbo were kept confidential as trade secrets.

In summary, the Court concludes the Magistrate Judge
did not err when he found Plaintiffs' trade-secrets claim against
Krevanko was objectively specious.

**B.  Subjective misconduct.**

Plaintiffs contend the Magistrate Judge erred when he
found Plaintiffs engaged in subjective misconduct by bringing a
trade-secrets claim against Krevanko.  Specifically, the
Magistrate Judge found Plaintiffs engaged in subjective
misconduct when (1) they denied Krevanko's request that
Plaintiffs admit Krevanko did not sign a confidentiality
agreement with TigerStop and (2) they produced a "fabricated" and
misleading example of a confidentiality agreement as an exhibit
at Krevanko's deposition.

8 - OPINION AND ORDER

During Krevanko's deposition on July 15, 2008, Plaintiffs' counsel presented an exhibit to Krevanko titled "Employee Agreement", which was dated January 1, 2005, and which listed Krevanko and TigerStop as "Parties."  The exhibit contained a footer that referenced an electronic file labeled "Tiger Stop Current Emp Agreements" suggesting the document had been stored electronically as it would have been if it had been created in the normal course of business.  Plaintiffs' counsel presented the exhibit and asked Krevanko the following question:

> Okay.  Let's go to what I'll mark as Exhibit 2.
> This is a multipage unsigned employment agreement
> that does not bear a Bates number.  You'll see
> that the first page identifies David Krevanko.
> Have you ever seen this document before?

Krevanko responded he had not seen Exhibit 2 until after this case was in litigation and testified "I don't recall ever having signed an employment agreement . . . presented to me."

As the Magistrate Judge noted, Plaintiffs' counsel did not state at any time during Krevanko's deposition that Exhibit 2 was a document created for the purpose of litigation nor did counsel clarify that it was merely an example of the kind of employment agreement Krevanko might have signed under Plaintiffs' assumed theory of the case.  Indeed, it was only after Krevanko sought to perform a forensic inspection of Plaintiff's computer system in an effort to determine when Exhibit 2 was created that Plaintiffs acknowledged on September 22, 2008, that Exhibit 2 was

9 - OPINION AND ORDER

created on August 30, 2006, which is the date they terminated
Krevanko's employment with TigerStop.

Even if Plaintiffs did not create Exhibit 2 with the
intent to fabricate evidence, the Magistrate Judge concluded
Plaintiffs were aware before deposition that Exhibit 2 was not an
employment agreement executed by Krevanko.  Nevertheless, the
Court agrees with the Magistrate Judge that Plaintiffs created
that impression at deposition through the suggestive manner in
which Exhibit 2 was used.  Although Plaintiffs insist they merely
used Exhibit 2 as a demonstrative exhibit, the Court notes
Plaintiffs' counsel could have used a blank form for
demonstrative purposes.  Instead Plaintiffs' counsel phrased the
question to Krevanko as "You'll see that the first page
identifies David Krevanko," which, without clarification,
reasonably suggests and actually gave Krevanko the impression
that Exhibit 2 was an authentic employment agreement presented to
him and/or executed by him on January 1, 2005.

Nevertheless, Plaintiffs maintain they did not engage
in subjective misconduct because they did not actually know that
Krevanko had never signed an employment agreement with TigerStop
until after they conducted discovery.  Plaintiffs cite a number
of cases to support their proposition that "the merits of a trade
secret case are generally developed through discovery."  These
cases, however, do not in any way support Plaintiffs' misleading

10 - OPINION AND ORDER

use of Exhibit 2 during the deposition or their refusal to
acknowledge that Krevanko did not sign an employment agreement
after Krevanko requested such an admission.

On this record, therefore, the Court concludes the
Magistrate Judge did not err when he found Plaintiffs engaged in
subjective misconduct.

In summary, the Court concludes the Magistrate Judge did not
err when he found Plaintiffs's trade-secret claim against
Krevanko was objectively specious and that Plaintiffs engaged in
subjective misconduct.  Accordingly, the Court adopts the
Magistrate Judge's recommendation to allow Krevanko to seek
attorneys' fees under Oregon Revised Statute § 647.467.

**II.  Attorneys' fees under the Federal Rules of Civil Procedure.**

The Magistrate Judge concluded Krevanko is entitled to
attorneys' fees "incurred in connection with having to prove the
fact which his request for admission asked Plaintiffs to admit
and which they denied."  Specifically, Federal Rule of Civil
Procedure 37(c)(2)(C) and (D) provide:

> **Failure to Admit.**  If a party fails to admit what
> is requested under Rule 36 and if the requesting
> party later proves a document to be genuine or the
> matter true, the requesting party may move that
> the party who failed to admit pay the reasonable
> expenses, including attorney's fees, incurred in
> making that proof. The court must so order unless:
>
> * * *
>
> (C) the party failing to admit had a reasonable
> ground to believe that it might prevail on the

11 - OPINION AND ORDER

matter; or

(D) there was other good reason for the failure to admit.

Krevanko propounded requests for admissions to Plaintiffs in which he asked Plaintiffs to admit that he "never signed a confidentiality agreement with TigerStop." Plaintiffs denied that request for admission. Plaintiffs argue they had a "good reason" for failing to admit that Krevanko did not sign a confidentiality agreement based on the testimony of Spencer Dick, TigerStop's president, and on the fact that confidentiality agreements were signed by other Precision employees before Krevanko began his employment with TigerStop, by other TigerStop employees after Krevanko's tenure at TigerStop, and by employees of Tucker & Verlenden.

As the Magistrate Judge pointed out, however, even though Dick testified Krevanko "agreed to sign a non-compete agreement," Dick testified he was "unaware of whether [Krevanko] did or did not [sign a confidentiality agreement]." Moreover, the employees who signed confidentiality agreements either worked for companies other than TigerStop or, as with Brode, did not sign confidentiality agreements with TigerStop during the time Krevanko was employed there.

On this record, the Court concludes Krevanko has established Plaintiffs' conduct was not permissible under Rule 37(c)(2)(C) and (D). Accordingly, the Court adopts the Magistrate Judge's

12 - OPINION AND ORDER

finding that Krevanko also is entitled to attorneys' fees incurred in establishing that Plaintiffs improperly denied his request for admission.

In summary, this Court has carefully considered Plaintiffs' Objections and concludes their Objections do not provide a basis to modify the Findings and Recommendation.  The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation.


## CONCLUSION

The Court **ADOPTS** Magistrate Judge Acosta's Findings and Recommendation (#214) and, accordingly, **GRANTS** Defendant Krevanko's Motion for Attorneys' Fees and Expenses (#171) in an amount to be determined in further proceedings before the Magistrate Judge.

IT IS SO ORDERED.

DATED this 24th day of April, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


13 - OPINION AND ORDER