FILED
FEB 16 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PRECISION AUTOMATION, INC., a
Washington Corporation, TIGERSTOP
LLC, an Oregon Corporation,

              Plaintiffs,

        v.

TECHNICAL SERVICES, INC., an Iowa
Corporation,
              Defendants.

_____

TECHNICAL SERVICES, INC., an Iowa
Corporation and DAVID KREVANKO,

              Counterclaim Plaintiffs,

        v.

Civ. No. 07-707-AC

FINDINGS AND
RECOMMENDATION

FINDINGS AND RECOMMENDATION     1             {KPR}

PRECISION AUTOMATION, INC., a
Washington Corporation, TIGERSTOP
LLC, an Oregon Corporation,

       Counterclaim Defendants

ACOSTA, Magistrate Judge:

## Introduction

Defendant David Krevanko ("Krevanko") moved for an award of attorney fees and costs associated with the trade secret misappropriation claim brought against him by Plaintiffs Precision Automation, Inc. and TigerStop LLC (collectively "Plaintiffs"). The court granted Krevanko's motion on January 22, 2009.[1] The court must determine the amount of attorney fees and costs to which Krevanko is entitled.[2] Krevanko claims a total of $202,802.49 in attorney fees and costs. Precision disputes this amount on the grounds that it represents an unreasonable amount of time, departs substantially from the estimate given in the original motion for attorney fees, and is insufficiently documented. For the reasons outlined below, Krevanko should be awarded $129,432.15 in attorney fees and costs.

## Discussion

Krevanko's motion for attorney fees was granted pursuant to Oregon Revised Statutes ("ORS") 646.467, an Oregon statute that authorizes attorney fees where a trade secret

---

[1] The Findings and Recommendation issued on January 22, 2009, and Judge Brown formally adopted the recommendation on April 28, 2009.

[2] This disposition also evaluates Defendants' Bill of Costs (#174), filed on October 3, 2008.

FINDINGS AND RECOMMENDATION    2                        {KPR}

misappropriation claim "is made in bad faith."[3] OR. REV. STAT. 646.467 (2007). "In an action where a district court is exercising its subject matter jurisdiction over a state law claim, so long as 'state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975)). Under Oregon law, attorney fee awards are governed by ORS 20.075, which sets forth several factors the court "shall consider" both in determining whether fees should be awarded and the reasonable amount of those fees:

> (1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:
>
>> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>>
>> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>>
>> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>>
>> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>>
>> (e) The objective reasonableness of the parties and the diligence of the parties

---

[3] The Findings and Recommendation granted attorney fees under the Oregon statute, as well as under Rule 37(c)(2), to the extent that they were "incurred in connection with having to prove the fact which his request for admission asked Plaintiffs to admit and which they denied." (Docket No. 214 at 12.) As these fees are a subset of those fees available to Krevanko under state law, and the state and federal schemes are substantially similar, the court will analyze the amount of attorney fees under the state framework as set forth in ORS 20.075.

and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

OR. REV. STAT. 20.075 (2009). In considering these factors, "[a] trial court must identify the facts and legal criteria that it uses when arriving at an award but the findings 'need not include criteria

immaterial to the decision and not used by the trial court.'" *Cape Haze Invs., Ltd. v. Eilers*, Case No. C08-809RSL, 2009 U.S. Dist. LEXIS 35199, at *5 (W.D. Wash. Apr. 13, 2009) (quoting *Wright v. Jones*, 155 Or. App. 249, 964 P.2d 1048, 1050 (1998)) (internal citation omitted). Although an "opposing party's objections to the attorney fee award 'play an important role' in framing the issues relevant to the court's decision . . . [in the absence] of objections from the opposing party, the court has an independent duty to review a fee petition for reasonableness." *Kraft v. Arden*, CV. 07-487-PK, 2009 U.S. Dist. LEXIS 19445, at *6-7 (D. Or. Mar. 9. 2009) (quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or. 185, 188, 957 P.2d 1200 (1998)).

As a threshold matter, the parties do not dispute the reasonableness of the hourly rate claimed by Krevanko. Consistent with the district court's recommendation under Local Rule 54-3, Krevanko referred to the most recent Oregon State Bar Economic Survey ("Survey") when making his case for the hourly rates charged in this matter. In particular, Krevanko cited the 2008 Survey for the average rates for intellectual property, business litigation, and general litigation services. The Survey found that "the average and median rate for Intellectual Property lawyers is approximately $275-299 per hour." (Johnson Declaration ("Decl."), Exhibit ("Ex.") F at 2.) The same rate for business litigation and general litigation was approximately $299 per hour and $250-274 per hour, respectively. (Johnson Decl., Ex. G at 2; Ex. E at 2.) Krevanko calculates the average hourly rate spent on his defense at $202.94 per hour, decidedly below the average rates charged locally in each potentially applicable category of legal practice. (Johnson Decl. 4.) And, as Krevanko points out in his reply, Plaintiffs do not dispute the average hourly rate claimed by Krevanko in his application for attorney fees. Because the rate is below the rates typically charged for litigation and intellectual property legal work in Oregon and because the rate suggested is reasonable in light of the record in this case,

the court accepts the claimed rate as reasonable.

Plaintiffs dispute the reasonableness of the number of hours that Krevanko claims were spent defending against the trade secret misappropriation claim. Plaintiffs challenge the amount of time claimed by Krevanko because the increase in fees over the estimate provided in the original motion for fees is unreasonable; compared to other cases, the amount of time spent and fees accrued are unreasonable; and Krevanko's documentation is insufficient to support the amount of fees claimed. The court will address each ground in turn.

A.    Increase in Fees From Original Estimate

Federal Rule of Civil Procedure ("Rule") 54 states, in part, that a motion for attorney fees must include "the amount sought or provide a fair estimate of" that amount. FED. R. CIV. P. 54(d)(2)(b)(iii). In his motion for attorney fees filed October 3, 2008, Krevanko sought "attorney[] fees in the amount of $86,402 and expenses in the amount of $1650." (Motion for Attorney Fees (#171) at 3.) This motion was granted with the amount to be determined in subsequent proceedings and, accordingly, Krevanko submitted a memorandum setting forth the amount of attorney fees he currently claims. Krevanko now seeks a total of $202,802.49 in fees and costs, an increase in the total amount sought of $114,750.49. Plaintiffs argue that this increase is presumptively unreasonable and, therefore, the court must reject Krevanko's petition for attorney fees. Plaintiffs also argue that the unexpected increase has prejudiced them in their ability to accurately assess their position and determine the most advantageous litigation strategy. Plaintiffs suggest that, because all claims against Krevanko had been dismissed prior to the filing of the motion for attorney fees, Krevanko should have been able to provide a more accurate estimate of fees expended on this litigation. Plaintiffs state that permitting such an increase would effectively render the Rule 54 estimate

requirement moot.

Krevanko responds that the increase in fees is due to legal work related to the request for fees as well as the inclusion of fees related to depositions in the fee petition. Krevanko argues that it was not possible to include subsequent legal fees in the original estimate, namely those expended on the attorney fee reply brief and Krevanko's response to Plaintiffs' objections to the court's Findings and Recommendation. Furthermore, Krevanko admits that he did not include deposition-related fees in the original estimate because the depositions were formally noticed by TSI. However, Krevanko explains that in the current fee request he chose to include half of the fees for depositions associated with the trade secret claims, reasoning that the court should award Krevanko the fees he is entitled to now, rather than later. He also claims all of the fees and expenses associated with his own deposition. After accounting for the increase in fees and expenses associated with subsequent briefing and taking depositions, Krevanko argues that the increase from the original request is only $14,424 and therefore reasonable. Plaintiffs do not specifically object to the inclusion of deposition-related fees in the fee request, except to the extent that they are not properly associated with the misappropriation claim against Krevanko.

Plaintiffs cite *44 Liquormart v. Rhode Island*, 940 F. Supp. 437 (D.R.I. 1996) to underscore the importance of compliance with Rule 54. In that case, the court held that the plaintiffs' failure to timely file a motion for attorney fees did not qualify as "excusable neglect" under Rule 6 sufficient to create an exception to Rule 54. *Id.* at 439. The court noted that this was fundamentally an equitable determination based on the specific facts and circumstances of the case. *Id.* at 440. In order to effectuate the policies Congress advanced in enacting Rule 54, i.e., timely consideration of fees following trial and allowing the "'adverse party . . . to assess his position . . . and be guided as

to his future action,'" the court strictly enforced the time limits set forth in Rule 54. *Id.* at 443 (quoting *Sol Salins, Inc. v. W.M. Ercanbrack*, 155 F.R.D. 4 (D.C. 1994)). Thus, Plaintiffs argue, in failing to include a reasonable estimate of the fees sought in the original motion, Krevanko prejudiced Plaintiffs by preventing them from developing a litigation strategy in light of the full amount of fees ultimately sought.

The court agrees that the increase from the original amount is substantial. The major share of this increase, however, is a result of the inclusion of fees and costs associated with depositions. Plaintiffs did not object to the inclusion of deposition fees and costs, except to the extent that it contributed to the increased amount. From the court's perspective, the inclusion of fees related to depositions, while tardy, is a reasonable one and Plaintiffs do not contend that deposition related fees and costs are not recoverable. Furthermore, the court's own analysis of the deposition-related fees and costs results in an award substantially less than that requested by Krevanko and, thus, the increase from the original amount is not sufficient to actually have prejudiced Plaintiffs in their litigation strategy relative to this motion.

B.    Reasonableness of the Amount of Time

Plaintiffs contend that Krevanko's fee request reflects an unreasonable amount of time dedicated to defending against their claim. To illustrate this point, Plaintiffs contrast Krevanko's requested award with the amount awarded in *Contract Materials Processing v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733 (D. Md. 2002). Plaintiffs argue that *Contract Materials* represents a case significantly more complex than the single claim lodged against Krevanko and one that lasted for a substantially longer time. They point out that, despite the increased time and complexity, the award in that case was much lower than the amount requested here. Krevanko responds that

FINDINGS AND RECOMMENDATION        8                                    {KPR}

Plaintiffs' characterization is misleading and that the present matter was also very complex, mostly due to Plaintiffs' own actions which made the matter difficult to defend and delayed its resolution.

In *Contract Materials*, the defendants were awarded attorney fees for a trade secret misappropriation claim brought in bad faith. In dismissing the trade secret claim at summary judgment, the court observed that the plaintiff failed to produce any evidence at all that the information was actually a trade secret, the plaintiff made no effort to keep the information a secret, and the information was legally transferred to the defendants; thus, no misappropriation could have occurred. 222 F. Supp. 2d at 736-37. The court wrote: "CMP's effort to avoid summary judgment as to its misappropriation claims was a singular failure, and my September 18, 2001, opinion explicating the utter lack of substantive legal merit in CMP's misappropriation of trade secrets claims will speak for itself." *Id.* at 746. As Plaintiffs point out, the parties in *Contract Materials* engaged in "months of extended and contentious discovery[,]" involving several motions to compel and three protective orders. *Id.* at 748. The court ultimately awarded the defendants $134,945 in fees, representing 530.8 hours of legal work.

Plaintiffs point out that, in *Contract Materials*, the discovery process was long and contested; the court adjudicated the claim on summary judgment, rather than a motion to dismiss; three separate contracts were involved in the litigation; and there were issues involving service of process to parties in Germany. Krevanko responds that the present matter was also very complicated, involving a request for expedited discovery; three amended complaints; a request for a preliminary injunction; six different responses to a single interrogatory; production of unsourced documents; repetition of a false claim that a confidentiality agreement existed; and production of a fabricated document at deposition. This, Krevanko contends, demonstrates that the claim was extensively litigated and that

Plaintiffs themselves were responsible for the amount of fees generated and, accordingly, the amount of fees requested by Krevanko.

The court agrees that the result in *Contract Materials* does not establish that Krevanko's attorney fee request is unreasonable. Although the two cases bear some similarity, they are not so similar that this court can reasonably compare them in the manner Plaintiffs suggest. Plaintiffs do not assert any other grounds upon which Krevanko's fee estimate is objectively unreasonable. The court is not persuaded that the amount, as a whole, is per se unreasonable. To the extent that the individual charges are objectively reasonable and sufficiently documented, that amount of fees will be allowed, the exact amount dependant on the exercise of the court's independent duty to review the fee petition for reasonableness.

C.    Reasonableness of Claimed Fees[4]

Plaintiffs assert several threshold arguments to challenge Krevanko's fee request. Plaintiffs argue that Krevanko has failed to submit sufficient documentation of his claimed attorney fees and costs and, thus, the court may reduce the fee award consistent with the principles set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In *Hensley*, the Supreme Court stated that a court should reduce a fee award accordingly "[w]here the documentation of hours is inadequate . . . ." *Id.* at 433. Specifically, Plaintiffs assert that Krevanko has failed to identify which hours were originally claimed and which hours are part of the new request; has included legal work for unrelated claims; and has submitted insufficient information to identify how the time was spent and allow the court adequate review. Each argument is addressed below.

---

[4] The court has divided the claimed fees and costs into subcategories for easier analysis and computation. Certain entries may qualify for inclusion in more than one category, but will be included only in the category the court deems most appropriate for its purposes.

FINDINGS AND RECOMMENDATION        10                        {KPR}

1.    *Fees not included in original request*

Plaintiffs argue that Krevanko fails to identify which fees and costs were in the original request and those that are included for the first time in this request. Krevanko responds that this information is contained in the declaration of R. Scott Johnson[5] ("Johnson Declaration") which specifies how many hours were spent on discovery (not including depositions), depositions, and the motion for attorney fees and costs. Although the declaration does not explicitly identify those fees accrued before and after the motion was filed, it does indicate in general terms which fees were associated with the motion itself and which accrued prior to its filing. Furthermore, the briefing explains the source of the increase in fees requested, namely, the inclusion of fees and costs arising from depositions and the fees and costs accrued to litigate the motion for attorney fees subsequent to its filing. Krevanko has explained this aspect of his fee request and the fees are recoverable. Plaintiffs provide no authority to support denial of these fees. Regarding the sufficiency of Krevanko's documentation generally, the court addresses that issue in detail, below.

2.    *Fees associated with other litigation*

Plaintiffs also argue that Krevanko may not claim fees associated with litigation between Krevanko and Allstate Insurance or between Plaintiffs and Technical Services, Inc. ("TSI"). The court addresses Plaintiffs' two objections, in turn.

a.    Allstate Insurance

Krevanko claims entitlement to fees associated with litigation with Allstate after Allstate sought to avoid providing coverage to defend Krevanko against Plaintiffs' claim. Krevanko argues

---

[5] The following pages of Exhibit A to the Johnston Declaration are blank, i.e., entirely redacted, and contain no entries for fees or costs:  2, 5, 7, 13-15, 18, 20-23, 25-26, 32, 35, 44, 48, 52, 58, 64, 69, 77, 81, 85-90, 92, 97-100.

that, but for Plaintiffs' meritless claim, he would not have been involved in litigation with Allstate and incurred the associated fees and, therefore, the two-and-a-half hours claimed are properly included in his fee request. These charges[6] total $700.[7]  Although the court agrees that Plaintiffs' claim against Krevanko is the but-for cause of his dispute with Allstate, it is not clear to the court that Plaintiffs should be responsible for fees arising from litigation with an insurance company seeking to avoid a defense obligation. Krevanko provides no authority to this effect. Without a basis upon which to impute such fees onto Plaintiffs, the court declines to do so and Krevanko should not be awarded said fees.

      b.     TSI

      Plaintiffs object to attorney fees and costs associated with its claims against TSI. Krevanko argues that both he and TSI were accused of misappropriating trade secrets and that they engaged in a joint defense of these claims, which were related based both on substance and on Krevanko's employment relationship with TSI. Furthermore, Krevanko argues, Plaintiffs did not specifically identify which fee entries are attributable only to TSI and not also to Krevanko.

      Several entries on the submitted invoices are attributable to legal work on behalf of both

---

[6] Specific entries from Exhibit A to the Johnston Declaration will be identified in footnotes, in the following format. Where a page contains a single unredacted entry or where all entries on a page belong in the same category, only the page number will be cited. For example, on page 50 all three entries represent fees that should be recoverable only by TSI and, therefore, page 50 is cited without further specificity. Where a page contains multiple entries, the specific entries will be identified as follows: on each page, entries will be given a number relative to their order on the page, i.e., the first or top entry will be one, the second entry will be two, and so on. This information will be contained in a footnote to the cited page number. For example, on page 27, there are ten entries. Those associated only with TSI are entries 1-4 and 10. Thus, the specific citation would read: 27: 1-4, 10.

[7] 8; 12.

FINDINGS AND RECOMMENDATION     12                  {KPR}

Krevanko and TSI. It is impossible to determine what portion of many billing entries was spent on work that benefitted Krevanko, or whether the work benefitted both parties. Even so, the court has, to the extent possible, divided the entries into those that apply only to TSI and those that apply to both Krevanko and TSI, in whole or in part. Those fees associated with entries that apply only to TSI should not be awarded to Krevanko. These fees total $15,534.[8] Of those fees associated with both TSI and Krevanko, Krevanko should be awarded half of their total amount. Those fees total $31,386.50[9] and, thus, Krevanko should be awarded $15,693.25.

    3.    *Sufficiency of Documentation*

    Plaintiffs also address other alleged deficiencies in Krevanko's fee petition. They cite three examples they claim are insufficient to allow the court adequate review, and one example where hours are claimed without an accompanying hourly rate. Specifically, Plaintiffs cite pages 29, 30, and 36 of Exhibit A as lacking sufficient description and argue that the court should reject Krevanko's current submission and order him to submit additional information. Krevanko responds that, even if the court accepts Plaintiffs' argument, this applies to only three entries and will not significantly reduce the fee award.

    The court does not find that Krevanko's documentation is generally insufficient. Taking into consideration both Plaintiffs' specific objections to Krevanko's documentation as well as the court's own independent duty to review the documentation, the court addresses the reasonableness and sufficiency of the claimed fees in detail, below.

---

    [8] 27: 1-4, 10; 28: 3-7, 13; 29: 3, 11; 33: 3; 37: 3-4; 50; 53: 2; 79: 2; 80.

    [9] 6; 9; 10; 16; 27: 5-9; 28: 8-9; 29: 1, 5; 30: 1-6; 31: 2; 34: 4-7; 36; 37: 1-2, 5-8; 38: 1, 3-4; 39: 1, 2, 5-6; 40: 1, 3; 41; 42; 45; 46: 1; 47; 49:1; 51: 3-6; 53: 1; 54; 55: 1, 3-5; 56: 2-4; 57: 1-2; 59: 1-4; 60: 1; 62: 2-3; 63: 1; 66; 68; 78: 2,4.

### a.    Fees Explicitly Associated with Krevanko Only

After reviewing the attached exhibits documenting and describing the services for which fees and costs are claimed, the court identified the entries from Exhibit A to the Johnson Declaration that are explicitly associated with the claim against Krevanko only, not including those fees and costs associated with his deposition. These fees total $33,384.50[10] and should be awarded in full to Krevanko.

Exhibit C to the Johnson Declaration is an invoice from Barran Liebman LLP, upon which Krevanko claims $2785.00 in fees incurred by Karen L. O'Connor. In their opposition brief, Plaintiffs object these fees because the invoice does not include an hourly rate and only identifies the task performed and the number of hours spent on that task. However, it is clear from the Johnson Declaration that those fees were incurred by Ms. O'Connor at a rate of approximately $275.00 per hour. Plaintiffs give no other ground upon which to deny the claimed fees and, thus, the court should award the fees set forth in Exhibit C, totaling $2785.00, to Krevanko.

Exhibit D comprises invoices for costs and fees attributable to Krevanko's representation by Dunn Carney Allen Higgins & Tongue, prior to that firm's withdrawal from the case. Plaintiffs do not dispute these fees on a specific or a general basis. These fees are solely attributable to Krevanko and the court should award said fees, totaling $46,006.70.

### b.    Fees Associated with Depositions

Krevanko seeks fees for those depositions that were at least in part associated with the misappropriation of trade secrets claim. Krevanko seeks half of the fees those depositions and all

---

[10] 1; 3; 4; 11; 17; 19; 24; 28: 1-2, 10-12; 29: 2, 4, 6-10, 12; 30: 7; 31: 1; 33: 1-2; 34: 1-3; 38: 2; 39: 3-4; 43; 46: 2-7; 65; 78: 1, 3; 79: 1, 3-6, 8; 82: 1, 3; 83: 2-3; 84; 91; 93-95; 96: 1.

of the fees associated with his own deposition. He reasons that most of the depositions would have taken place even if the trade secret claim had not been alleged against him, but that they would have been shorter. Krevanko acknowledges that some of the fees sought were beneficial to both defendants, but argues that if he does not recover the fees now, TSI will seek them in the future. Plaintiffs do not specifically object to the request for deposition-related fees and costs, but generally object to fees that are associated with other litigation, i.e., those related to Plaintiffs' claims against TSI.

According to the Johnson Declaration, Exhibit A, fees incurred for Krevanko's own deposition amount to $5,200.[11] The court should award these fees to Krevanko in their entirety. Costs and fees associated with other depositions[12] related to this matter, to the extent the court deems them reasonable, total $77,634. Krevanko is not entitled to the full measure of fees and costs for depositions and, in fact, seeks only half of said fees. The court believes this estimate allocates too much of the deposition-related fees to Krevanko. Bearing in mind that the deposition expenses cited by Krevanko were beneficial to both defendants and may have addressed both trademark and patent claims, the court concludes that Krevanko should recover one-quarter of the total claimed deposition fees and costs for a total of $19,408.50.

c.     *Fees Associated with Forensic Insepection*

Krevanko also seeks fees associated with the forensic inspection that was required after Plaintiffs produced a seemingly fabricated document at deposition. Entries relating to these fees are

---

[11] 61: 6, 7.

[12] 51: 1-2; 59: 5; 60: 2, 4-6; 61: 1, 3-4, 8-10; 62: 1, 4; 63: 2; 70: 1-2, 4, 6, 8; 71: 1, 3-5, 8, 10, 12, 15; 72: 1-6, 8-12, 14; 73; 74: 1- 2 (less $100 for overweight baggage), 3-7, 16; 76: 2, 96: 4.

found in the Johnson Declaration, Exhibit A and total $3,212.[13] The court should award these costs and fees in total.

> d.    *Bill of Costs*

Exhibit B to the Johnson Declaration comprises a series of invoices from ProCopy, a copying service in Des Moines, Iowa. Plaintiffs do not specifically object to the costs claimed in this exhibit. The majority of the claimed costs are also claimed in Defendants' Bill of Costs (#174). The court will award these costs only once and, therefore, this disposition represents the final award for both Krevanko's attorney fee petition and Defendants' Bill of Costs. The court, upon reviewing the individual entries, finds no reason to question their validity. Accordingly, the court should grant these costs in full for a total of $3,742.20.

> e.    *Entries Specifically Excluded*

The court has excluded specific entries from the award that contain insufficient description or are unreasonable. First, certain entries contain insufficient description to justify multiple attorneys billing for a single task. In these instances, the billed time is redundant and the court declines to grant attorney fees for each attorney.[14] Instead the court grants fees associated with each task to only one attorney. Second, the court strikes two specific fee entries containing insufficient description to either justify their length and purpose[15] or to identify how much time was spent on multiple

---

[13] 67; 71: 7, 14; 75; 76:1.

[14] Excluded fee entries found at 40: 2; 55: 2; 57: 3; 60: 3, 7; 79: 7; 82: 2; 83: 1; 96: 2 (reduced by one-half), 3.

[15] 49: 2.

FINDINGS AND RECOMMENDATION         16                    {KPR}

tasks.[16]  Third, the court will not award attorney fees for the time of two lawyers traveling to

Portland, Oregon for the same depositions.[17]  The billing statement does not explain why the

presence of two attorneys was required, or what specific role each attorney played, and indicates that

only one of the two attorneys actually conducted the questioning during these depositions.  The court

declines to grant attorney fees for the additional travel and deposition expenses where it is unclear

whether the expenditure of time and money was justified.

###### *f.    Total Award*

The total costs and fees Krevanko should be awarded are $129,432.15.

###### *Conclusion*

For the reasons above stated, the court should award $129,432.15 in attorney fees and costs

to Krevanko in satisfaction Krevanko's application for attorney fees (#258) and Defendants' Bill of

Costs (#174).

//

//

//

###### *Scheduling Order*

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due March 2, 2010.  If no objections are filed, then the Findings and Recommendation will go

under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy

---

[16] 56: 1.

[17] 70: 3, 5, 9; 71: 2, 6, 9, 11, 13, 16; 72: 7, 13; 74: 8, 9 (reduced by one-half), 10-15, 17-19.

of the objections.  When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

DATED this 12th day of February, 2010

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION        18                              {KPR}